## MITCHELL v. MARKER.

(Circuit Court of Appeals, Sixth Circuit. May 8, 1894.)

No. 144.

1. APPEAL—OBJECTIONS TO EVIDENCE.
    An objection to evidence, to be available on writ of error, must be specific, and distinctly indicate the grounds upon which the objection is made.

2. OPERATION OF PASSENGER ELEVATORS—DEGREE OF CARE REQUIRED.
    A carrier by elevator is not an insurer of the safety of his passengers, but is required to exercise the highest degree of care, as in the case of

a carrier by railway or stagecoach; and therefore *held* not error to charge in the light of the particular case, and in connection with the context, that reasonable care to prevent injury to passengers upon an elevator was "the highest degree of care consistent with the possibility of injury." 54 Fed. 637, affirmed.

3. SAME.

The rule that a carrier of passengers must exercise the highest degree of care, whether carried in an elevator or a railway, includes the control and management of the means of transportation, and is not restricted to the vehicle and machinery.

4. SAME.

· It is the duty of one operating an elevator to give passengers reasonable opportunity to obtain a balance upon entering the car, before a rapid and sudden upward movement is begun, having a tendency to disturb the equilibrium of one yet in motion; and therefore *held* not error to charge, in such case, that "it is the duty of the elevator man to see that all his passengers are on, and to give them sufficient time to adjust themselves."

5. SAME.

Error alleged as to the charge of a court will not be considered by the circuit court of appeals for the sixth circuit (rule 11), where the assignment of errors does not set out the part referred to in totidem verbis.

In Error to the Circuit Court of the United States for the Southern District of Ohio.

This was an action by Elijah M. Marker against Robert Mitchell to recover damages for personal injuries. There was a verdict for plaintiff in the circuit court, and afterwards a motion for a new trial was denied. 54 Fed. 637. Defendant sued out this writ of error.

C. D. Robertson and Charles T. Greve, for plaintiff in error.
W. H. Jackson and Theo. Hallam, for defendant in error.

Before LURTON, Circuit Judge, and RICKS, District Judge.

LURTON, Circuit Judge. This was an action for personal injuries sustained by appellee while being carried in a passenger elevator in an office building in the city of Cincinnati, Ohio, owned by the appellant. There was a jury, and a verdict for the appellee. The bill of exceptions is very meager, and was prepared chiefly with a view of presenting certain questions of law arising upon the charge of the court. There is, however, one error assigned upon the ruling as to the admission of evidence. To understand that assignment, and its bearing upon the other assignments which relate to the charge, we set out so much of the bill of exceptions as relates to the evidence submitted. It is as follows:

"The plaintiff, to maintain the issue on his part, offered testimony tending to prove the allegations of the petition, to wit, to· prove that the servant of the defendant, while in the line of his employment, for hire, operating a passenger elevator in the Mitchell building, in Cincinnati, belonging to said defendant, was negligent in such a degree and manner as to injure the plaintiff, who was lawfully entering said elevator; and, in the course of said testimony for plaintiff, counsel for plaintiff asked the following question, which was objected to by counsel for defendant, but said objection was overruled by the court, to which exception was then and there taken by counsel for defendant, and the question was answered as herein set forth, to· wit: 'Q. You say that you frequently spoke to this man about the rate of speed at which he was running the elevator? A. Yes, sir; time and again' (the

man referred to being the man whose alleged negligence in operating said elevator at the time of the accident is the cause of complaint herein). That thereupon plaintiff rested, and thereupon defendant offered testimony tending to contradict the evidence of plaintiff, and to prove the allegations of the answer, to wit, that there was no negligence on the part of the defendant, causing said accident, and thereupon defendant rested; and thereupon plaintiff offered evidence tending to rebut the evidence of the defendant; and this was all the evidence offered by either party to the cause."

The first error assigned is as follows:

"(1) The court erred in allowing the asking of the following question of plaintiff: 'You say that you frequently spoke to this man about the rate of speed at which he was running the elevator?' (the man referred to being the elevator man, whose alleged negligence in operating the elevator is the cause of complaint herein),—and in allowing said question to be answered, as follows, to wit: 'Yes, sir; time and again.' The counsel for the defendant then and there excepting."

This assignment is bad. The ground of objection was not stated in the court below. The exception was a general one. The ground now assigned is that "the question was an improper one, as it tended to establish a habit of negligence on the part of defendant's agent, while the point at issue in this case was not the negligence of defendant in employing a careless servant, but the negligence of that servant at the time of the accident." What was said about the speed of the elevator man is not shown. We are left to speculate and conjecture as to whether it was a warning that his speed was dangerous, or a commendation as to his regulation of the speed, or a complaint that his speed was too slow. The cases are numerous which hold that, to avail on writ of error, an objection to evidence must be specific, and distinctly indicate the grounds upon which the objection is made. Noonan v. Mining Co., 121 U. S. 400, 7 Sup. Ct. 911; Patrick v. Graham, 132 U. S. 627, 10 Sup. Ct. 194. Aside from this, it is impossible for this court to assume that the court was in error in excluding the testimony now complained of; for its character is not sufficiently evident, and its bearing upon the issues by no means plain, in view of the meagerness of the bill of exceptions.

The second error is that the court erred in charging the jury as follows:

"It follows that reasonable care, under those circumstances, is a high degree of care,—the highest degree of care consistent with the possibility of injury."

This sentence is the last of a paragraph concerning the degree of care required in the operation of an elevator. That paragraph is as follows:

"Mr. Marker seeks to recover damages from Mr. Mitchell, on the ground that he suffered an injury because of Mitchell's negligence. Mitchell is the owner of a building on Fourth street, in which there is an elevator. The elevator is put in there for the purpose of accommodating those who wish to go to offices of Mitchell's tenants; and Mitchell owes a duty, therefore, to those who take that elevator for that lawful purpose, to see that he uses every reasonable means that carriage on the elevator shall not injure those who use it. Now, every reasonable means are those means which a man of ordinary, careful prudence would use under the circumstances. When a man steps upon an elevator of this character, he places himself under the

control of another; and it follows that reasonable care, under those circumstances, is a high degree of care,—the highest degree of care consistent with the possibility of injury."

Particular objection is made to the expression, "consistent with the possibility of injury." Appellant's counsel argue that the jury were thereby given to understand that the owner of an elevator was "practically an insurer;" that "consistent with the possibility of injury" "means just allowing for such a possibility." This is a strained and unnatural interpretation. The sentence must be read with its context, and in the light of the particular action being tried. The expression, "consistent with the possibility of injury," is not the happiest which might have been chosen. It is plain, however, that the court was not misunderstood, when we consider the subject-matter of the suit, the dangers incident to vertical carriage, the helplessness of a passenger so carried, and the serious consequences to ensue from even slight negligence. The obvious meaning of the court, when the objectionable sentence is read in the light of the particular case on trial, and in connection with the context, was, that reasonable care, under such circumstances, would be a high degree of care, the highest degree of care being only such as would be commensurate with, or proportionate to, the possibility of injury to one so entirely dependent upon the caution and skill of another, and the soundness of the machinery used for his transportation. To say to a jury that the law requires that the degree of care to be exercised must be such as is "consistent with the possibility of injury" is only to say that the care must be commensurate with, or in proportion to, the possibility of injury presented by the particular situation. There was nothing in the paragraph excepted to which would justify an inference that a carrier by elevator was an insurer of the safety of his passengers. Assuming that the charge meant what we understand it to mean, and that the jury would not be justified in putting any other meaning upon it, we think the principle of law stated was both wholesome and sound.

We see no distinction in principle between the degree of care required from a carrier of passengers horizontally, by means of railway cars or stagecoaches, and one who carries them vertically, by means of a passenger elevator. The degree of care required from carriers by railway or stagecoach is the highest degree. Neither is an insurer, but, in regard to each, care short of the highest degree becomes, not ordinary care, but absolute negligence. Speaking of the degree of care required from a railroad company, the supreme court, in Pennsylvania Co. v. Roy, 102 U. S. 458, said:

"He is responsible for injuries received by passengers in the course of their transportation which might have been avoided or guarded against by the exercise upon his part of extraordinary vigilance, aided by the highest skill, and this caution and vigilance must necessarily be extended to all the agencies or means employed by the carrier in the transportation of the passenger."

See, also, Coasting Co. v. Tolson, 139 U. S. 551, 11 Sup. Ct. 653; Gleeson v. Railroad Co., 140 U. S. 435, 11 Sup. Ct. 859.

In Stokes v. Saltonstall, 13 Pet. 181, the same measure of care was required from the owner of a stagecoach.

The suggestion that this rule applies only to the vehicle or machinery is not sound. There is no distinction between the duty in regard to vehicle and machinery and track and that required in the control and management of the means of transportation. In the last case cited the supreme court approved a charge in which the degree of care required from a driver of a stagecoach was laid down as the "utmost prudence and caution." The rule in regard to carriers of passengers has been well stated by Judge Cooley in his very able work on Torts. He says:

> "Such carrier only undertakes that he will carry them without negligence or fault. But as there are committed to his charge, for the time, the lives or safety of persons of all ages, and of all degrees of ability for self-protection, and as the slightest failure in watchfulness may be destructive of life and limb, it is reasonable to require of him the most perfect care of prudent and cautious men; and his undertaking as to his passengers goes to this extent: that, as far as human foresight and care can reasonably go, he will transport them safely. He is not liable if injuries happen from sheer accident or misfortune, where there is no negligence or fault, or where no want of caution, foresight, or judgment would prevent the injury. But he is liable for the smallest negligence in himself or his servants." Cooley, Torts (2d Ed.) 768, 769.

The case of Treadwell v. Whittier, reported in 80 Cal. 574, and 22 Pac. 266, is directly in point. The question there presented was the degree of care required from one operating a passenger elevator. After considering and stating the rule required from carriers by railway and coach, the California court said:

> "The same responsibility must attach to one controlling and running an elevator. Persons who are lifted by elevators are subjected to great risk to life and limb. They are hoisted vertically, and are unable, in case of the breaking of machinery, to help themselves. The person running such elevator must be held to undertake to raise such persons safely, as far as human care and foresight will go. The law holds him to the utmost care and diligence of every cautious person, and responsible for the slightest neglect. Such responsibility attaches to all persons engaged in employments where human beings submit their bodies to their control by which their lives or limbs are put at hazard, or where such employment is attended with danger to life or limb. The utmost care and diligence must be used by persons engaged in such employments to avoid injury to those they carry. The care and diligence required is proportioned to the danger to the persons carried. In proportion to the degree of danger to others must be the care and diligence to be exercised. Where the danger is great, the utmost care and diligence must be employed. In such cases the law requires extraordinary care and diligence. We know of no employment where the law should demand a higher degree of care and diligence than in the case of the persons using and running elevators for lifting human beings from one level to another. The danger of those being raised is great. When persons are injured by the giving way of the machinery, the hurt is always serious,—frequently fatal; and the law should, and does, bind persons so engaged to the highest degree of care practicable under the circumstances. It would be injustice and cruelty to the public, in courts, to abate in any degree from this high degree of care. The aged, the helpless, and the infirm are daily using these elevators. The owners make profit by these elevators, or use them for the profit they bring to them. The cruelty from a careless use of such contrivances is likely to fall on the weakest of the community. All, including the strongest, are without the means of self-protection upon the breaking down of the machinery. The law therefore throws around such persons its protection, by requiring the highest care and diligence."

The case of Goodsell v. Taylor, 41 Minn. 207, 42 N. W. 873, is a like case, and the rule applicable to carriers by railway is there applied to carriers by passenger elevators.

The third assignment of error is as to so much of the charge as held it to be "the duty of the elevator man to see that all his passengers are on, and to give them sufficient time to adjust themselves." The petition charged that as the plaintiff—

"Was entering the car of the elevator in said building, to be carried to the fifth floor thereof, while he was in the act of entering said car, and before he was allowed the proper time to safely balance or adjust himself therein, the agent or servant having charge of the running of said elevator negligently and carelessly caused the same to be suddenly started, with great, unusual, and dangerous speed and violence, and negligently failed to guard the door or entrance to the car of said elevator, * * * by reason of which negligent acts and omission of defendant's agent or servant, and also by reason of the unsafe construction of said elevator, the plaintiff was thrown violently from his feet, and was caught between the cage of said elevator and a projection of the floor above, and sustained serious and permanent injuries," etc.

Upon this allegation the court said:

"Now, it is charged in this petition that Bartholomew failed in three respects: First, that he started the elevator too quickly; and by that I don't refer to the starting of the elevator by jerks, but I mean that he didn't wait long enough, until Marker should have time to adjust himself to the quick, upward motion. Of course, it is the duty of the elevator man to see that all his passengers are on, and to give them sufficient time to adjust themselves. Whether that was done in this case, it is for you to say. If he did not do that, and if, by reason of starting too quick, the accident occurred, Mr. Mitchell is liable."

We think there was no error in this, as applied to the issue to which it related. It was clearly the duty of the engineer operating the elevator to give passengers reasonable opportunity to obtain a balance upon entering the car, before a rapid and sudden upward movement is begun, having a tendency to disturb the equilibrium of one yet in motion.

The fourth and last error assigned is in these words: "The court erred in charging the jury with reference to the duty of the elevator man in extending his arm." The language of the assignment is precisely the language in which the exception was taken. Looking to the petition, we find that it alleged that the door or entrance to the car was unguarded, and that plaintiff fell out this door, and was jammed between the elevator and the shaft. Looking to the charge, we find that the court commented upon the issue thus presented, and the testimony relating to the issue, and submitted to the jury the question as to whether, under the circumstances, reasonable prudence would have required the elevator man to have extended his arm in such way as to prevent one losing his balance from falling out the door. The facts relating to this issue are not included in the bill of exceptions; and we cannot say whether there was or was not evidence justifying the submission of this question to the jury. Certainly, we cannot, on this record, say that it was error in the trial court to have so instructed the jury. But a fatal objection to this assignment is that it does not set out the part of the charge referred to. Rule

11 requires that, "when the error alleged is to the charge of the court, the assignment of errors shall set out the part referred to totidem verbis, whether it be in instructions given or in instructions refused."

Counsel, in brief, have complained of other parts of the charge. But as no exception was taken on the trial, and no error has been assigned as required by the rule cited above, we cannot consider them.

The judgment must be affirmed.