MAY TRAVIS COOPER, Appellant, v. CENTURY REALTY COMPANY.

Division One, December 23, 1909.

1. **ELEVATOR: Common Carrier.** The company owning an office building in which is a passenger elevator for the use of persons doing business therein, is, as to such elevator and persons, a common carrier of passengers.

2. **NEGLIGENCE: Passenger: Pleading: General and Special: Proof.** Where a passenger is injured through the negligence of the carrier, it is not necessary to plead the specific acts of negligence which caused the injury, but the petition will be sufficient if it charges negligence in general terms. Under such

a petition, all that is required of plaintiff to make out his case, is to show that the defendant was a common carrier, and that the injured party was a passenger and was injured while being carried. But where the petition charges the specific acts of negligence, namely, in this case, that there was no operator in the passenger elevator when the plaintiff entered it through an open door, and that the machinery provided for its operation and control was out of repair, in consequence of which it began suddenly to descend, those acts must be proved as alleged, or plaintiff cannot recover.

3. ————: **Stepping in Stationary Elevator:    Defective Lever.** The elevator had in the evening been run up to the tenth floor, to what is called the automatics, by which it was automatically stopped, and there it remained during the night, its door open, and its floor a little above the level of the floor of the building. The elevator was operated by means of a lever, pushed back and forth; when pushed to one side the elevator would ascend, and when pushed to the other side it would descend. The elevator was originally provided with a tangent along which the lever worked, and the lever was intended to be held in place by a pawl, which fitted into a notch in the tangent, thereby constituting a catch or lock, which held the lever in a stationary position, and it in turn held the car stationary. But this tangent had been removed, and the pawl had been tied up with a piece of wire, thereby liberating the lever, and leaving it to oscillate according to the motion of the car, and instead of controlling the car's movement the car might control its motion; and so evenly balanced was the car and its counter-weights and hydraulic pressure that, in order to keep the car stationary, the lever had to be kept in constant motion, back and forth across the center. Plaintiff, who had operated a telephone exchange through the night, about 7 a. m. stepped into the elevator, not knowing there was no operator present; it began to descend, she became frightened, and in trying to get out was injured. *Held*, that the stepping of the girl into the car overcame the even balance of the car and its counter-weights and caused it to descend; that she was a passenger, was not guilty of contributory negligence, and a demurrer to her case should not have been sustained.

4. ————: ————: ————: ————: **Proof of What Might Have Caused the Accident.** The law did not require plaintiff to show that none of the car's counter-weights had been removed. She was not required to show what might have caused it to descend; nor that certain things did not cause it to descend. All she was required to do was to show what did cause its descent, and that she did by showing it began to descend when she stepped upon it.

5. ———: ———: ———: ———: Not Pleaded. If by manipulating the lever or some other act of negligence she caused it to descend and therefrom received her injuries, then defendant should have both pleaded and proved contributory negligence on her part.

6. ———: Contributory: Instruction: Fright. The instruction told the jury that if they "believed from the evidence that plaintiff exercised ordinary care for her own safety while approaching, entering and while on said elevator, and that after said elevator had started to descend and by reason of the descent thereof plaintiff was seized with terror and alarm for her own safety, and that plaintiff had reasonable cause to apprehend peril and danger to herself, and that the appearance of danger was imminent, leaving no time for her to deliberate, then the court instructs the jury that her attempt to escape from said elevator resulting in her injuries is not contributory negligence on the part of the plaintiff," etc. *Held*, correct.

7. ———: Descending Elevator: Movement of Lever: Inferred From Other Facts. The facts showed that the elevator would neither descend nor ascend unless the lever moved back and forth across the tangent, but it showed the pawl that locked the lever was absent, that the car descended when its counterweights were overbalanced, and that it did descend when plaintiff stepped upon it. *Held*, that, although there was no positive or direct testimony that the lever moved, yet there were facts and circumstances from which it could reasonably be inferred, and that was sufficient.

Appeal from St. Louis City Circuit Court.—*Hon. O'Neil Ryan*, Judge.

REVERSED AND REMANDED (*with directions*).

*Joseph A. Wright* for appellant.

(1) The doctrine of *res ipsa loquitur* applies. Orcutt v. Century Building Co., 201 Mo. 424; Luckel v. Century Building Co., 177 Mo. 608; Fox v. Philadelphia, 208 Pa. St. 127; Springer v. Ford, 189 Ill. 430; Hartford Deposit Co. v. Sollett, 172 Ill. 222; Edwards v. Manufacturers' Bldg. Co., 2 L. R. A. (N. S.) 744; Mitchell v. Marker, 62 Fed. 139, 25 L. R. A. 33; Treadwell v. Whittier, 80 Cal. 574. (2) *Res ipsa loquitur* was properly pleaded. Orcutt v. Century Building Co., supra; Allen v. Railroad, 183 Mo. 411.

(3) An elevator for the carriage of persons is not supposed to be a place of great caution; on the contrary, the open door is an invitation, and it may be assumed to be a place of safety without stopping to look, listen or make a special examination. Tousey v. Roberts, 114 N. Y. 312; Bank v. Morganlofski, 75 Md. 432; Burgess v. Stone, 134 Mich. 204; Hayes v. Pitts-Kimball Co., 183 Mass. 262; Colorado Mort. & Invest. Co. v. Rees, 21 Colo. 435. (4) The law of contributory negligence was properly declared, for a case of sudden terror and alarm. Root v. Railroad, 195 Mo. 348; Bischoff v. Railroad, 121 Mo. 216; Kleiber v. Railroad, 107 Mo. 240; McFern v. Gardner, 121 Mo. App. 1.

*Seddon & Holland* for respondent.

The court did not err in sustaining defendant's motion for a new trial. Orcutt v. Century Bldg. Co., 201 Mo. 424; Klebe v. Parker Dist. Co., 207 Mo. 480; Rodan v. Railroad, 207 Mo. 392; Turner v. Hoor, 114 Mo. 335.

WOODSON, J.—This suit was begun in the circuit court of the city of St. Louis by the plaintiff to recover twenty-five thousand dollars damages for personal injuries received by her through the alleged negligence of the defendant.

A trial was had, and the judgment was for plaintiff for the sum of five thousand dollars. The court sustained a motion for a new trial for the reason stated, that it should have sustained a demurrer to the evidence at the close of the whole case. From this order granting a new trial, the plaintiff duly appealed the cause to this court.

The character of the legal propositions involved call for a copy of the petition upon which the cause was tried.

It was as follows (formal parts omitted):

"That defendants are now, and were at all times herein mentioned, corporations duly organized and existing under the laws of the State of Missouri, and having capacity to sue and liable to be sued, and that such corporations are and were at all times herein mentioned, in possession of and engaged in operating, maintaining and managing a ten-story office building commonly known as the Century Building and situated on the northwest corner of Olive and Ninth streets in the city of St. Louis, Missouri. That on or about the 29th day of April, 1903, the date of the negligent acts in this petition complained of, defendants, in the operation, maintenance and management of such Century Building, were operating, managing and maintaining in said building a system of passenger elevators in vertical shafts; and that said elevators were designed and intended by defendants for the use and enjoyment of the tenants of said building, their employees and others frequenting said building in being carried thereon as passengers. That on said last-mentioned day, the Kinloch Telephone Company, a corporation carrying on a general telephone business and furnishing the services of a telephone exchange to its various subscribers, was a tenant of defendants," and occupied a large number of offices on the tenth floor of said Century Building, and that plaintiff on said day was an employee of said Kinloch Telephone Company in the capacity of a night exchange operator, working in said offices on said tenth floor of said building; and that as an incident of her said employment with said tenant, plaintiff, on said day, was entitled to use the said system of elevators and to be carried thereon by defendants as a passenger. That, at about 7:00 o'clock a. m. on said 29th day of April, 1903, plaintiff left the said offices of the Kinloch Telephone Company for the purpose of returning to her home, and that as she approached said elevator shaft on said tenth floor of said building, the door or gate of one of said elevators ·

used for carrying passengers was open, and the floor of said elevator was standing at or near a level with the flooring of said tenth floor of said building, in the same manner and appearance as when said elevator was in actual use for the carrying of passengers. And that defendants on said day and prior thereto, when the doors or gates opening into said shafts were left open and the said elevators placed in proper position in the various floors of said building for the reception of passengers, kept and maintained in each of said elevators an operator to manage, control and operate said elevator to enable passengers thereon to be carried with safety, as was the duty of defendants toward the plaintiff and other persons using said elevators, but that defendants failed and neglected to have an operator in charge of said elevator on the said day when she took passage thereon and received her injuries.

"That said elevator was run and operated by a hydraulic machine, and that ropes and cables connected said elevator with said machine, and that in the operation of said elevator a lever therein controlled its movement, said lever being connected with and a part of said hydraulic machine. That about said hour of said day the plaintiff became a passenger on said elevator, entering therein through the open door or gate of said shaft, to be carried from said tenth floor to the ground floor of said building. That after entering said elevator she discovered for the first time that there was no operator upon said elevator and she thereupon attempted to leave said elevator, and that before plaintiff could make an exit from said elevator, it suddenly started downward, and before the plaintiff could step out of said elevator and in attempting to do so, she was caught between said elevator and the shaft thereof and thereby sustained serious and permanent internal and external injuries about her head, body and limbs, and had her left arm so seriously crushed and broken

that it was necessary to have said arm amputated between the elbow and shoulder.

"Plaintiff states that while said elevator was standing in proper position for the reception of passengers on said tenth floor with the gate or door open into said elevator, and while thereby plaintiff and others were being invited by defendants to enter said elevator to be carried thereon as a passenger, defendants, their said agents and servants carelessly and negligently failed to place in said elevator an operator to manage and control the same as was the duty of said defendants toward plaintiff, and that the said carelessness and negligence of defendants in not having an operator in charge of said elevator, directly contributed to cause the said injuries to the plaintiff.

"That for other and further assignment of negligence, plaintiff states that there was in force in the city of St. Louis, at the time of said injury, an ordinance, the same being an ordinance No. 19991, approved April 3, 1900, by the term of Sec. 198, Art. 3, Chap. 1, it was provided as follows: 'Owners of all buildings erected prior to the passage of this ordinance, number eighteen thousand nine hundred and sixty-four, containing elevator hatches or well holes, elevator shafts or open courts shall, upon written notice from the commissioner of public buildings so to do, properly and sufficiently guard and protect such elevator hatches, well holes or elevators with gates or guards so as to avoid danger to human life, and said gates or guards shall be closed except when the elevators are in actual use.' Plaintiff states that at the time of her said injuries said elevator was not in actual use, and that the gate or guard in the said elevator shaft was not closed as required of defendants by said ordinance and that the said carelessness and negligence of defendants in not having said gate or guard closed at the said time, directly contributed to cause said injuries to the plaintiff.

"That for other and further assignment of negligence, plaintiff states that at the time of entering said elevator, through the carelessness and negligence of defendants, said hydraulic machine was defective in condition and out of order, rendering said elevator unsafe and dangerous for receiving and carrying passengers therein; that defendants, their agents and servants in charge of and operating said elevator, knew or by the exercise of an ordinary degree of care could have known that the said hydraulic machine was then and there defective in condition and out of order, and that said elevator was thereby rendered unsafe and dangerous for receiving and carrying passengers therein; that wholly disregarding their duty to the plaintiff, they permitted her to enter said elevator to take passage therein; that after plaintiff had entered therein, said elevator descended by reason of the said hydraulic machine being defective in condition and out of order, and that while thus descending and in attempting to escape therefrom, plaintiff sustained her said injuries in manner aforesaid; and that the said negligence and carelessness of defendants in running and operating said elevator with said hydraulic machine being in a defective condition directly contributed to cause the said injuries to the plaintiff.

"That by reason of the said injuries caused by defendants' said negligence, plaintiff has sustained and will in the future sustain great pain of body and mind; that her body has been permanently disfigured; that she has lost her left arm and has lost and will in the future, for the remainder of her life, lose the earnings of her labor; that she has incurred and become obligated for and will in the future incur and become obligated for great expense for medical attention, medicines, and nursing, all to her injury and damage to the sum of $25,000, for which she prays against the defendants, and for costs."

The answer consisted of a general denial and a

plea of contributory negligence; and the reply was a denial of the new matter stated in the answer.

The plaintiff, on motion to elect having been filed, abandoned the alleged violation of the city ordinance, as set forth in the petition; and the court instructed the jury that she could not recover because the elevator was not being operated at the time by an elevator boy.

It will not be necessary to notice the evidence in detail, except that portion bearing upon the question of negligence on the part of the defendant, and that tending to prove contributory negligence on the part of the plaintiff.

Plaintiff's evidence tended to prove all of the allegations of the petition, and that tending to prove negligence on the part of the defendant was substantially as follows:

That about seven o'clock a. m., April 29, 1903, plaintiff left the telephone rooms, following two young ladies, Misses Penn and Netling, who promised to wait for her in the hall. On reaching the elevator shaft, plaintiff found the door to elevator No. 2 was open, and the young ladies mentioned were standing near by. The floor of the elevator car was several inches above the level of the floor of the tenth story of the building. Upon reaching the door the plaintiff stepped into the elevator and invited her companions to join her. Miss Penn followed the plaintiff into the elevator. Almost instantly after they stepped upon the car it suddenly, without apparent cause, started to descend at the ordinary speed to the ninth floor of the building. Not until the car started to descend, however, did plaintiff discover that there was no elevator boy on board and in charge thereof. Upon discovering the elevator was descending without an elevator boy in charge, she became frightened, and in her excitement she attempted to escape therefrom, and in doing so was caught thereby and crushed between it and the elevator shaft; the

exact manner of the injury, however, is not shown, as plaintiff became unconscious and was thereby rendered unable to describe it. Her injuries necessitated the amputation of her left arm.

It was a hydraulic elevator and was operated by means of a lever. When the lever was pushed north the elevator would go up, and when pushed south it would go down. The tangent in which the elevator ran had been removed, and the pawl to hold the lever in place, which fitted into the tangent, was tied up with a wire. There was no catch or device to hold the lever in place and to prevent its moving from one side to the other. The lever had to be kept in motion, back and forth, to hold it on the center. It would not stay there of its own accord, but had to be held there, in place. The car was brought to a standstill "just by reversing it [the lever] from one side to the other." In other words, when the car was at a standstill, the lever was in constant motion. When the car was at rest for the night it was "run clear up to the top floor to the automatics that stopped the water." That also stopped all that appertained to the elevator. In order to keep the elevator on the top floor, the lever had to be pushed to the "up notch" at the north extremity of the segment of the circle in which the lever swung.

Warren B. Hayes testified for the plaintiff, substantially, as follows: That he was in charge of elevator No. 2 the day previous, and had been working on that car for about a year. He described how the elevators were hydraulic and their movements controlled by water, and how the operator used a lever inside the car to control its movements. This witness was on day duty, and about 6:30 p. m. on April 28, 1903, he ran the elevator up to the tenth floor and left it for the night. The question was asked him as to what means there were for holding the lever in the center, and he stated there was none to his knowledge at that time. He further testified that there was no

quadrant for the elevator lever to move in, for the elevator to ascend the lever had to be pushed to the north —descend, to the south—to stop, center, as a general thing. Asked if he did not testify before the special commissioner that the tangent had been taken off, he said he did not remember the question at all. He did not remember whether there was a tangent on the car on April 28, 1903, or not.

W. J. Castanie, city inspector, testified for the plaintiff that he was familiar with the elevators used in the Century Building. He examined elevator No. 2 at ten o'clock the morning of April 29, 1903. The latch on the lever which had ordinarily to be lifted up to remove it from the notch in the center of the tangent was tied up with a piece of wire or twine. "As I say, it was tied up at that time to the handle of the lever, it could not drop down into the notch in the quadrant." He testified that the tangent and quadrant mean the same thing, and is that part that the lever moves in to keep the lever from moving from side to side and to enable the prawl or latch to drop into the notch. The lever had a sweep of about thirty inches and the quadrant had a radius of about four feet. If the prawl were not tied up it would drop down into the notch at the center of the quadrant and thereby stop the further progress of the lever. Very little force was required to move the lever. That at the time he examined the elevator it was in good condition, nothing out of order except as before stated.

William Dougherty, a witness for defendant, testified that he was working for the Century Realty Company, in the Century Building, on April 29, 1903. When he and Mr. Castanie examined elevator No. 2 the morning plaintiff sustained her injury, they found "the little lever that had the prawl attached to it was tied up with part of the spring like." He could not tell how long the prawl had been tied up. At time of the trial

this witness was in the employ of the Century Realty Company.

The court, over the objections of defendant, gave for the plaintiff the following instructions:

"1. The court instructs the jury that if you find and believe from the evidence in this case that on or about the 29th day of April, 1903, the elevator in question was in the possession of and operated by defendant Century Realty Company, and situated in said defendant's building, and that plaintiff was employed by a tenant in the building and went to the elevator for the purpose of being carried thereby from the tenth floor of said building to the ground floor thereof, and if you further find and believe from the evidence that as the plaintiff approached said elevator the door or gate was open, and that there was no operator upon said elevator, and that plaintiff believed and in the exercise of reasonable care had a right to believe the elevator was in service, and that after plaintiff had entered said elevator it suddenly started downward, and that thereupon plaintiff attempted to leave said elevator, and in attempting to do so, was caught between the elevator and the shaft and sustained injuries; and if the jury further find and believe from the evidence that the plaintiff at the time of approaching said elevator shaft and of entering therein, and while thereon and in attempting to leave said elevator, was in the exercise of ordinary care for her own safety, and if the jury further find and believe from the evidence that the hydraulic machine operating said elevator was defective in condition and out of order and was so known to the defendant, Century Realty Company, or by the exercise of ordinary care might have been so known, and if the jury further find and believe from the evidence that the descent of said elevator was directly caused by the hydraulic machine being defective in condition and out of order, and that plaintiff attempted to leave

the elevator in the circumstances referred to in plaintiff's instruction numbered 2, then the court instructs the jury that your verdict must be for the plaintiff.

"2. The court instructs the jury that if you find and believe from the evidence that the elevator started downward by reason of the hydraulic machine being defective in condition and out of order and that it was so known to the defendant Century Realty Company, or by the exercise of ordinary care would have been so known at the time of and prior to the injury, long enough to repair it, if you find such condition and knowledge from the evidence; and if the jury further find and believe from the evidence that plaintiff exercised ordinary care for her own safety while approaching, entering and while on said elevator, and that after said elevator had started to descend and by reason of the descent thereof, plaintiff was seized with terror and alarm for her own safety, and that the plaintiff had reasonable cause to apprehend peril and danger to herself, and that the appearance of danger was imminent, leaving no time for her to deliberate, then the court instructs the jury that her attempt to escape from said elevator resulting in her injuries is not contributory negligence on the part of plaintiff, such as will prevent her from recovering for her injuries, if the attempt was one such as a person acting with ordinary care and prudence, might, under the circumstances, make.

"3. By the term 'ordinary care' used in these instructions is meant the degree of care that would be exercised by a person of ordinary prudence under the same or similar circumstances. The omission of such care is negligence as that term is used in these instructions.

"4. By the term 'burden of proof' and 'preponderance of evidence' as used in these instructions, the court does not refer to the number of witnesses sworn

on either side, but means that in point of value and credibility, the evidence offered by a party to this suit on whom devolves the burden of proof, to sustain the issues concerning which the burden of proof is placed, under these instructions, upon said party, must outweigh that of the other party regarding said issues; and the court further instructs the jury that they are the sole judges of the credibility of the witnesses and the value to be given to their respective statements and evidence.

"5. The court instructs the jury that if you find for the plaintiff you will assess her damages at such sum as will be fair and reasonable compensation to her:

"(1). For the pain of body and mind she has suffered, directly caused by her injuries, and the pain of body and mind, if any, you believe from the evidence she is reasonably certain to suffer in the future, directly caused by her injuries.

"(2). For the loss of earnings of her labor she has suffered, directly caused by her injuries, and the loss of earnings of her labor, if any, you believe from the evidence she is reasonably certain to suffer in the future, directly caused by her said injuries.

"(3). For any expenses for medical services directly caused by her injuries, which plaintiff has incurred and become obligated for."

## OPINION.

I. Counsel for appellant complains of the action of the trial court in sustaining respondent's motion for a new trial and in setting aside the judgment in her favor.

The record discloses the fact that the court granted respondent a new trial for the reason that it was of the opinion that it should have given the demurrer to the evidence asked at the close of all of the evidence

in the case. In other words, the trial court was of the opinion that there was no evidence to support the verdict, as contended for by counsel for respondent. This contention is most earnestly denied by counsel for appellant. He insists that the elevator department of respondent was a common carrier of passengers, that his client was a passenger upon the elevator in question, and that she was injured thereby while being carried thereon. That being true, he insists that the doctrine of *res ipsa loquitur* applies, which made a *prima facie* case for the jury to pass upon. Not only that, he also insists that the testimony of the witnesses who testified in the case established that appellant was injured through the negligence of defendant while she was being carried as a passenger upon the elevator in question.

There can be no question under the evidence in this case but that the respondent was a common carrier of passengers. [Orcutt v. Century Building Co., 201 Mo. 424, 214 Mo. 35; Luckel v. Century Building Co., 177 Mo. 608; Fox v. Philadelphia, 208 Pa. St. 127; Springer v. Ford, 189 Ill. 430; Hartford Deposit Co. v. Sollitt, 172 Ill. 222; Edwards v. Manufacturers' Bldg. Co., 61 At. (R. I.) 646; Mitchell v. Marker, 62 Fed. 139; Treadwell v. Whittier, 80 Cal. 574.]

In all cases where a passenger is injured through the negligence of the carrier, it is never necessary to plead the specific acts of negligence which caused the injury, but the petition will be sufficient if negligence is charged in general terms; and under such a petition all that is required of the plaintiff to make out his case is to show the defendant was a common carrier, that he was a passenger, and that he was injured by him while being carried. When those facts are shown the law presumes that the injury was the result of the carrier's negligence, which is sufficient to carry the case to the jury. [Price v. Railroad, 220 Mo. 435.] Also see case before cited.

It is also conclusively shown by the evidence that appellant was a passenger upon respondent's elevator at the time she received the injuries complained of; and from those facts counsel for appellant insists that the law presumes she was injured in consequence of respondent's negligence.

Ordinarily, under the authorities cited, that insistence would be well founded; but not true in this case, for the reason that this petition was not drawn along the lines of a general charge of negligence, but, upon the contrary, it stated the specific acts of negligence which resulted in her injury; namely, first, that there was no operator in the elevator, and, secondly, that the machinery was out of repair. Each of these acts of negligence was pleaded with much particularity, as will be seen by reading the petition, a copy of which accompanies this statement. The law in this State is well settled, that when the petition charges specific negligence, as this does, then the acts so charged must be proved as alleged before a prima-facie case is made, and it is not sufficient simply to prove the plaintiff was a passenger and that she was injured, as is true where allegations are general in character. [Beave v. Railroad, 212 Mo. 331; Klebe v. Distilling Co., 207 Mo. 480; Kirkpatrick v. Railroad, 211 Mo. 68.] We must, therefore, hold that there was no presumption of negligence on the part of the respondent upon which the judgment of the circuit court could stand.

We will now notice the second insistence of counsel for appellant; namely, that the testimony showed the respondent was guilty of negligence which caused her injury.

In brief the testimony tended to show that the elevator was operated by means of a lever, pushed back and forth; when pushed to the north the elevator would ascend, and to the south, it would descend. There was no catch or device to hold the lever in position, and thereby prevent it from moving back and

forth, thereby permitting the elevator to ascend or descend according to the motion of the lever. In other words, the lever had to be kept in motion across the center in order to keep the elevator stationary.

The elevator in question had not been used since 6:30 p. m. on the day prior to the date of the injury, at which time it was run up to the tenth or top floor of the building, to what is called the automatics, which automatically stopped the car. It there remained stationary until about 7 o'clock of the morning of the injury, when appellant and Miss Penn stepped into the elevator. Immediately upon their doing so, the car began to descend to the ninth floor, at which time she discovered the elevator was without an operator. This fact frightened her, and in her attempt to escape from the descending elevator she was in some unexplained manner caught and crushed between the descending elevator car and the elevator shaft, which resulted in the necessary amputation of her arm. There was nothing to show what started the car, except it is to be inferred from the stepping of appellant and Miss Penn therein.

Counsel for appellant argue that the jury might have reasonably inferred from those facts that the weight of the girls on the elevator car was sufficient to overcome the counter-weights and hydraulic pressure of the elevator and caused it to descend.

The evidence was uncontradicted which showed that so evenly balanced was the car and its counter weights and hydraulic pressure, that in order to keep the car stationary the lever by which it was operated had to be kept in constant motion, back and forth across the center of the tangent. In order to overcome that condition, the elevator was provided with a tangent along which the lever worked, and the lever was intended to be held in place by a pawl which fitted into a notch in the tangent, thereby constituting a catch or lock, which held the lever in a stationary position, and

it in turn held the car stationary also. The evidence also tended to show that the tangent had been removed sometime prior to the date of the injury, and the pawl had been tied up with a piece of wire, thereby liberating the lever, leaving it to oscillate according to the motion of the car; and instead of the lever controlling the motion of the car, the car might control the motion of the lever.

There can be no doubt but what the stepping of the girls with their weight upon the elevator put it in motion. This may be inferred from the fact that it remained in a stationary position all night and up to the very moment when they stepped upon the car, and then it was it began to descend. The descent was the effect, and we must conclude, in the absence of all evidence to the contrary, that their stepping and the weight of the girls upon the car caused it to descend; and the jury were, in our opinion, perfectly justifiable in drawing the conclusion therefrom that the motion of the girls with their weight broke the equilibrium which existed between the car and its counter-weights or forces, and thereby put the car on a downward motion. This, corroborated by the fact that the car descended normally instead of with a sudden fall, clearly indicates the car and its counter-weights were almost evenly balanced. The motion of the girls incident to their stepping onto the car, with their added weight, as before stated, outweighed and overbalanced the counter-weights and pressures upon the car, and thereby caused it to descend.

The only suggestion made by counsel for respondent against the unreasonableness of the foregoing deductions or inferences is stated by them in this language: "It must be borne in mind that the plaintiff in this case has not shown that after she and her friend got in the elevator, the elevator began to descend without the lever being moved."

That is true; nor did plaintiff show that none of

its counter-weights were removed. The law did not require her to show what might have caused the elevator to descend; nor to show that certain things did not cause it to do so. All she was required to do was to show what *did cause* its descent. [Gannon v. Laclede Gaslight Co., 145 Mo. 502.]

If appellant by her own negligence caused the elevator to descend, and thereby inflicted the injuries complained of upon herself, then respondent should not only have pleaded contributory negligence on her part but it should also have proved it. [Schmidt v. Railroad, 149 Mo. 269.]

We are, therefore, of the opinion that there was an abundance of evidence to support the verdict of the jury and the judgment of the court, and, consequently, we are also of the opinion that the trial court erred in granting respondent a new trial for the reason there was no evidence to support the judgment.

II. Counsel for respondent insist that even though the circuit court erred in granting a new trial for the reason assigned by it, yet they insist that the court erred in giving and in refusing instructions; and for those reasons they claim the order of the court granting a new trial should not be interfered with.

They first complain of the action of the court in giving instruction numbered one on behalf of appellant. There are two objections lodged against this instruction.

It is first insisted that there was no evidence introduced which tended to show that the elevator was caused to descend because of the defective condition of the hydraulic machinery. The undisputed evidence shows that the elevator in question was a hydraulic elevator; and the evidence abundantly shows that the tangent thereof had been removed therefrom, and that the pawl had been tied up with a wire, thereby permitting the elevator to ascend and descend without hin-

drance according to the weight or load upon the car and the counterweight or hydraulic pressure bearing upon other parts of the elevator. With those parts of the elevator present, it was a complete piece of machinery, as designed by its builder, and with them working properly the elevator could not have descended, but without those parts the machinery was incomplete or defective within the meaning of the pleadings, the evidence and the instructions. The evidence also shows the operator had been operating the elevator for some time prior to the injury without those parts. That not only showed notice upon the part of the respondent, but it showed it had actual knowledge of the defective condition of the elevator. Notice to the agent of respondent whose duty it was to operate the elevator was notice to the respondent.

The second objection presented to the first instruction given for appellant is that it "does not require a finding that such descent caused plaintiff's injury." Counsel certainly have overlooked the following clause of that instruction: "and that after plaintiff had entered said elevator it suddenly started downward, and that thereupon plaintiff attempted to leave said elevator, and in attempting to do so was caught between the elevator and the shaft and sustained injuries . . . . then your verdict must be for the plaintiff." This instruction, in as plain English as could have been employed, told the jury that they must find appellant was injured in consequence of the defective elevator before they could find for her.

This instruction also required the jury to find the facts to be as stated in instruction numbered two given for appellant before they could find for her. The latter instruction, among other things, told them that if they "believed from the evidence that plaintiff exercised ordinary care for her own safety while approaching, entering and while on said elevator, and that after said elevator had started to descend and by

reason of the descent thereof plaintiff was seized with terror and alarm for her own safety, and that the plaintiff had reasonable cause to apprehend peril and danger to herself, and that the appearance of danger was imminent, leaving no time for her to deliberate, then the court instructs the jury that her attempt to escape from said elevator resulting in her injuries is not contributory negligence on the part of the plaintiff," etc.

These two instructions properly declared the law of the case to the jury. [Root v. Railroad, 195 Mo. 348; Bischoff v. Railroad, 121 Mo. 216; Kleiber v. Railroad, 107 Mo. 240; Siegrist v. Arnot, 86 Mo. 200.]

We are, therefore, of the opinion that neither of said objections are well founded.

III. The action of the court in refusing the following instruction is complained of as error:

"A. The court instructs the jury that there is no evidence in this case that the lever of elevator No. 2 mentioned in the evidence, on account of any jarring incident to the plaintiff and Miss Penn, or either of them, getting on the said elevator, moved toward the south sufficiently to cause the elevator to descend, or that it moved toward the south at all on account of such jarring."

This instruction was properly refused. While there was no direct or positive testimony introduced which showed the jarring incident to appellant and Miss Penn getting on the elevator caused the lever of the elevator to move in any direction, yet there were facts and circumstances shown by the evidence from which the jury might have reasonably inferred the lever was moved to the south by reason of the jar incident to, or the motion caused by appellant and her companion stepping upon the car. This phase of the evidence was fully considered in paragraph one of this opinion, which renders it unnecessary to further discuss it.

IV.  The refusal of the court to give the following. instruction is complained of as being erroneous:

"B.  The court instructs the jury that there is no evidence in this case that the descent of elevator No. 2 on the occasion in question was due to any defect or defects in the machinery by which said elevator was operated."

This instruction was also properly refused.  Counsel for respondent objected to instruction numbered one given by the court for the appellant, for the reason, that, they contended, there was no evidence introduced upon which to base that part of the instruction which referred to the defective machinery.  We disposed of that objection in paragraph two hereof, and the reasons there stated for overruling that objection apply equally well here.  There is no merit in this complaint.

V.  Nor was there any error in refusing to give for respondent this instruction:  "C.  The court instructs the jury that there is no evidence in this cause that the injuries complained of by plaintiff were caused by the descent of elevator No. 2."  While the evidence is not just as clear as it might be as to just how the injury was inflicted, yet it is absolutely certain that it was caused by the descent of the elevator in some manner.

We are, therefore, of the opinion that the court erred in setting aside the judgment and in ordering a new trial.

We, therefore, reverse the judgment and remand the cause with directions to the circuit court to reinstate the judgment as of the date originally entered, to bear interest from that date.

All concur.