Mr. Justice Van Orsdeu
delivered the opinion of the Court:
It is important at the outset to consider the duty which defendant owes to persons entering his building for legitimate purposes, and using the elevators placed therein for their accommodation. The building in question is a business block devoted to public use. The elevators are an essential part of the •building, and persons using them do so by the invitation of -the defendant. It follows, therefore, that defendant in this instance is a carrier engaged in the transportation of passengers. While not, in the strict sense, an insurer, he is required to exercise the highest degree of diligence and care for the safety of persons using his elevator as agencies of transportation. It is doubtful if there is any known method of conveyance in which a higher degree of care is required in its . construction and operation than that of an elevator. In Mitchell v. Marker, 25 L.R.A. 33, 10 C. C. A. 306, 22 U. S. App. 325, 62 Fed. 139, Mr. Justice Lurton said: “We see no distinc-tion in principle between the degree of care required from a •carrier of passengers horizontally, by means of railway cars • or stage coaches, and one who carries them vertically, by means •of a passenger elevator.” •
The single exception assigned consists in the refusal of the -court below to direct a verdict for the defendant. The record *188 discloses that, at the time of the accident, the deceased was standing about the center of the car. The car was moving at the normal rate of speed. No jerk or jar occurred in its movement to throw deceased from his place. His fall was not caused from any act of defendant or his employees, or from any defect in the elevator itself. The record, however, discloses that at the time of the accident the projecting floors were not equipped with flares or fenders on the underside, as appears to be customary, to guard against accident by deflecting into the car any object coming in contact with them; that the door of the car was not closed; that, in violation of the instructions of the superintendent of the building, the elevator boy did not have his arm extended across the open door, and that there was-an emergency brake on the car which the elevator boy testified he did not know how to operate, and in respect of the operation of which he had been given no instructions. Upon these issues of fact the jury, by its verdict, found the defendant guilty of negligence. On the other hand, it is not contended that plaintiff’s intestate was guilty of contributory negligence. The sole question presented, therefore, is whether or not defendant’s negligence was the proximate cause of the accident.
The proximate cause of an injury is ordinarily a question of fact for the jury. If there are no circumstances from which a jury can reasonably find that the negligence of a defendant was the proximate cause of the injury, the question is one for the court, and not for the jury. But if the facts are such as to-cause reasonable minds to differ, then the question is one clearly for the determination of the jury. It was argued by counsel for defendant that the fall of the deceased was caused not through any defect in the movement of the elevator, but by the-act of God; and as this was the immediate, proximate cause-of the injury, however negligent the defendant’s agent may have been in leaving the door of the car open when the elevator was in motion, it cannot be charged that the accident was> due to the negligence of defendant.
We are not impressed with this contention. As was said in Milwaukee & St. P. R. Co. v. Kellogg, 94 U. S. 469, 24 L. ed. *189 256: "The true rule is that what is the proximate cause of an injury is ordinarily a question for the jury. It is not a question of science or of legal knowledge. It is to be determined as a fact, in view of the circumstances of fact attending it. * * * In a succession of dependent events an interval may always be seen by an acute mind between a cause and its effect, though it may be so imperceptible as to be overlooked by a common mind. * * * Such refinements are too remote for rules of social conduct. In the nature of things, there is in every transaction a succession of events more or less dependent upon those preceding, and it is the province of a jury to look at this succession of events or facts, and ascertain whether they are naturally and probably connected with each other by a continuous sequence, or are dissevered by new and independent agencies; and this must be determined in view of the circumstances existing at the time.”
In general the law looks to the proximate, and not to the remote, cause of the accident. The facts must constitute a succession of events so connected as to make an entire whole, without any new intervening cause. The proximate cause may not be the immediate, antecedent cause. It is sufficient if it sets in motion a series of events which terminate in the accident. Of course, the wrong and the injury must not be separated by an independent cause. In that event, not the original wrong, but the intervening act, would be the proximate cause. The intermediate cause, however, must be self-operating and disconnected from the primary wrong. What were the causes that produced the injury in this case? It was not alone the falling of the deceased,—that was merely the incident which exposed in bold relief the negligent manner in which the elevator was constructed and operated,—but the projecting floors, in connection with the open door of the car when the car was in motion, furnished a situation that might subject passengers to the danger of being injured in various ways and under numerous circumstances. The mere fact that a dangerous condition existed was sufficient to charge defendant with knowledge of the probability of a passenger’s getting caught *190 between the projecting floors and the floor of the ascending' car.
It may be conceded that the falling of the deceased was the-immediate cause of the accident, but it formed only the eon~necting link between the injury and the negligence of defendant. If the door of the car bad not been open, a condition wbicb existed only because of the negligence of defendant, the-injury could not have been inflicted. It therefore follows that if, technically speaking, the negligence of defendant was not the efficient cause, it was the cause but for the existence of wbicb the accident could not have happened. Whether or not the cansal connection between the negligence of defendant and-the accident was sufficient to establish defendant’s negligence as-the proximate cause of the injury was a question of fact for the jury, wbicb has been by the verdict resolved in favor of the plaintiff. This rule as to the proximate cause is supported-by the highest authority.
In Milwaukee & St. P. R. Co. v. Kellogg, supra, the injury-complained of was the burning of a sawmill wbicb was ignited by a burning elevator wbicb bad caught fire from one of the-railway company’s boats. In the opinion the court said: “But it is generally held, that, in order to warrant a finding that-negligence, or an act not amounting to wanton wrong, is the-proximate cause of an injury, it must appear that the injury was the natural and probable consequence of the negligence or' wrongful act, and that it ought to have been foreseen in the-light of the attending circumstances. These circumstances, in-a case like the present, are the strength and direction of the-wind, the combustible character of the elevator, its great height,, and the proximity and combustible nature of the sawmill and the piles of lumber.”
In Choctaw, O. & G. R. Co. v. Holloway, 191 U. S. 334, 48 L. ed. 201, 24 Sup. Ct. Rep. 102, a horse wandered onto the tracks of the railroad company, and fell into a trestle. the train struck the horse and the engine and tender were derailed, causing the accident complained of. It appeared that the engine was not furnished with brakes, and the court held *191 that the proximate cause of the accident was the failure of the-railroad company to properly equip the engine with brakes. On this point the court said: “It is insisted, however, on the part of the defendant, that the court erred in not holding that the absence of brakes on the engine was not the proximate cause of the injury; that the presence of the horse on the trestle was the proximate cause of derailing the tender and engine, and that the company was not guilty of any negligence by reason of which the horse came upon the trestle. We think this claim is unfounded, and that the proximate cause of the injury, within the meaning of the law, was the absence of the brakes on the engine. At any rate, there was evidence which made it a question for the jury to say whether the accident would have happened if there had been brakes on the engine, in good order and fit for use.”
In Hayes v. Michigan C. R. Co., 111 U. S. 228, 241, 28 L. ed. 410, 415, 4 Sup. Ct. Rep. 369, a boy was in a park adjoining the railroad track, and a portion of the fence between the park and the track was down. Another boy on the ladder of a car in a passing train motioned the plaintiff boy to come along. The plaintiff started to run beside the train, and as he did so, turned and fell, the car wheels passing over his arm. The trial court instructed a verdict in favor of the defendant. On appeal, the court, reversing the judgment, said: “It is further argued that the direction of the court below was right, because the want of a fence could not reasonably be alleged as the cause of the injury. In the sense of an efficient cause, ccmsa causans, this is no doubt strictly true; but that is not the sense in which the law uses the term in this connection. The question is, was it causa sine qua non,—a cause which, if it had not existed, the injury would not have taken place,—an occasional cause ? and that is a question of fact, unless the causal connection is evidently not proximate.”
In McDonald v. Toledo Consol. Street R. Co. 20 C. C. A. 322, 43 U. S. App. 79, 74 Fed. 104, it appeared that snow had fallen in the city of Toledo, Ohio, and drifted at the intersection of two streets to the depth of 4 feet. One of the streets was *192 occupied by the tracks of the defendant company. The snow was removed from the tracks by the direction of the company, .and piled in an irregular mass to a depth of from 4 to 6 feet on either side of its tracks, and between the tracks and the curbstones of the street. Plaintiff was driving.past a car standing on the tracks of the company, when the car started. His ■team became frightened, and ran over one of the piles of snow, upsetting the buggy, and causing the injury complained of. Mr. Justice Lurton, delivering the opinion of the court, and ¡reversing the judgment of the court below, said: “What, then, was the connection between his injury and the negligence of the •defendant in thus obstructing the street? He avers (and this, on demurrer, must be taken as true) that, but for the presence •of this mass of snow, he would have been able to have controlled his horses, and prevented any injury. If this is true, ■then this mass of snow, which ought not to have been where it was, and was only there through the action and negligent interposition of the defendant, was a cause, which, if it had not ■existed, the plaintiff’s buggy would not have been overturned, and he would have sustained no injury. If, therefore, the negligence of the company was not the causa causans, it was the ■causa sine qua non. Whether it was a cause without which the .accident would not have happened is a question of fact, unless the circumstances appearing demonstrate that the causal connection was not proximate.”
In the case of an elevator, the safety of the passengers is •dependent entirely upon its proper construction and operation. The passengers are usually compelled to stand up. They are •composed of men, women, and children, the aged and the infirm, and it is the duty of thé proprietor to have the appli•ances so safely adjusted that not alone those in normal health, but the most feeble, will be secure from probable accident. It is beside the case that the accident in this instance is not one that could readily have been anticipated. It is sufficient answer that if the car door had been closed it is highly improbable that the deceased would have been injured; and had injury resulted ¡from his fall, it could not then have been imputed to the cause *193 that here exists. The open ear door was the occasional cause, without which the accident could not have happened. We are unable to distinguish this case from the cases cited. If there had been brakes on the engine, the horse on the trestle would not, in all probability, have derailed the engine and tender; if the sparks from the boat had not fired the elevator, the sawmill would not have been burned; if the snow had not been negligently left in the street, the buggy would not likely have been overturned; if there had not been a hole in the fence, the boy might not have gone upon the tracks and been injured; and if the elevator car door had not been left open, the deceased would not have suffered the injuries he did. In each of these cases it was for the jury to say whether, had the particular act of negligence designated not existed, it would have prevented the accident.
It is urged that, from anything the record discloses, the deceased may have been dead before his head was caught between the floor of the building and the car. An autopsy was held, and there is testimony to the effect .that the brain and heart were found to be in normal condition, and that there was no indication of apoplexy or of a condition that would cause a fatal stroke. This, therefore, was a question of fact for the jury, upon which the evidence adduced was all against the theory of counsel for defendant.
The car was equipped with an emergency brake, which was not employed by the elevator boy in stopping it. He testified that he had not been instructed as to its use, and did not know how to use it. Considerable evidence was adduced as to how quickly an ascending ear could be stopped by the use of this brake. It is clear that the car could have been stopped in a much shorter space by its use than by simply relying upon the use of the controller, as was done in this instance. The elevator boy testified that he saw the deceased reel and fall from his position in the center of the car. It may well be that had he, at this crucial moment, applied the emergency brake, the accident would have been averted. This was a question of fact for the jury, upon which different minds might honestly draw *194 different conclusions. If the jury took this view of the case, and found that the accident was due to defendant’s negligence, arising from the failure of the elevator boy to use the emergency brake, it disposes of the question of proximate cause. It matters not what may have occurred up to the point when the deceased fell. If, at that moment, by the exercise of reasonable care in the use of the means at hand, defendant’s agent could have averted the accident, and failed to do so, the failure became the immediate and proximate cause of the accident.
The judgment is affirmed, with costs, and it is so ordered.
A writ of error to the Supreme Court of the United States was allowed on application of the appellant.