■ JOHN E. RUGIERI et al., as Guardians of JOSEPH RUGIERI, Appellants, v MARIE BANNISTER et al., Respondents, et al., Defendant. [802 NYS2d 140]—

Order, Supreme Court, New York County (Richard F. Braun, J.), entered on or about July 16, 2004, which, to the extent appealable, denied plaintiffs' motion for reargument and/or renewal, unanimously reversed, on the law, without costs, renewal granted, the judgments entered July 11, 2003 vacated, and the complaint against Terrance and Marie Bannister reinstated. Order, same court and Justice, entered on or about July 16, 2004, which granted defendant Leann Cheek's motion for summary judgment, reversed, on the law, without costs, and the complaint against this defendant reinstated. Appeal from order, same court and Justice, entered October 24, 2003, which denied plaintiffs' motion to vacate two orders, same court and Justice, entered June 25, 2003, and the judgments entered thereon, dismissing plaintiffs' complaint against Marie Bannister and Terrance Bannister, unanimously dismissed as academic, without costs, in view of the foregoing.

In September 1999, the Bannisters loaned their home in Sag Harbor, Long Island to defendant Leann Cheek. Cheek, who had previously stayed at the Bannisters' Sag Harbor home on numerous occasions, asked Dolores McAuliffe to join her for a weekend. On that Saturday evening, the women invited Joseph Rugieri and his companion James Toner to the Bannister home for dinner. The four shared the meal on the porch. Near the end of dinner, Rugieri excused himself to use the bathroom. Cheek noticed that Rugieri had gone into the kitchen, and that he had passed the bathroom, which was next to the living room.

After attempting to direct Rugieri to the bathroom, Cheek turned her attention back to the table. Cheek, McAuliffe and Toner heard a noise, and went into the house to find that Rugieri had fallen down the cellar stairs. Defendant McAuliffe described the incident as follows: "During dinner Rugieri rose from the table. I presumed he was going to the bathroom. However, he opened the *door to* the basement, upon which Cheek, Toner and [I] . . . called out to him that that was not the door to the bathroom, but rather to the cellar. He seemed not to hear us, appeared to be searching for something inside, probably the light, and then plunged down the cellar steps . . . to the basement floor." As a result of his fall, Rugieri suffered

facial fractures, a significant head injury, intracranial bleeds requiring bilateral craniotomies, and post-traumatic dementia.

Plaintiffs brought this action against Mr. and Mrs. Bannister, Leann Cheek and Dolores McAuliffe. The Bannisters moved for summary judgment dismissing the claims against them, and plaintiffs opposed the motion. However, plaintiffs' counsel failed to appear for oral argument on the motion, and the court granted it on default. Plaintiffs moved pursuant to CPLR 5015 to vacate the default. In support, their counsel submitted his affirmation stating that "due to a[n] unanticipated scheduling overlap, . . . he arrived . . . a few minutes after the calendar call." For corroboration, he also submitted a parking receipt that was stamped within minutes of his required appearance, and he related numerous attempts to communicate with defendants' counsel, to no avail. The court denied the motion, finding that plaintiffs failed to show either a reasonable excuse for the default or a meritorious cause of action.

Plaintiffs then moved for reargument and/or renewal, submitting the affidavit of an engineer who had inspected the Bannisters' cellar stairway in October 2003. This expert opined that the stairway violated several sections of the New York State Building Construction Code, cited in his affidavit, by exceeding accepted riser height differentials between stairs and positioning the handrail in a manner that did not extend to the top of the stairway. The expert also stated that the lighting of the stairwell, which consisted of one light on the basement ceiling five feet to the right of the bottom of the stairs,* was inadequate to illuminate the top portion of the stairwell. In response, Mr. Bannister submitted an affirmation asserting that he had made renovations to the home in the spring of 2002. The renovations, he said, included: "[remodeling of] the outside deck, kitchen and living room . . . . [In addition], [t]he door and door frame leading to the kitchen, the cellar door and door frame and lighting in both the living room and kitchen were completely changed, as was the kitchen flooring." Notably, Bannister did not indicate any alterations which affected either the cellar stairway or the lighting in that area.

In one of the orders entered on or about July 16, 2004, the court denied plaintiffs' motion for reargument and/or renewal of the motion to vacate their default. The court found an adequate excuse for counsel's failure to appear, but an insufficient showing as to the merits of the action. It concluded that the expert's affidavit, prepared after the house had been renovated,

---

* The switch for the light in the basement was at the top of the stairs.

did not connect the cited defects to the condition of the house at the time of Rugieri's injury.

In January 2004, defendant Cheek moved for summary judgment, arguing that as a guest at the Bannisters' home, she had no duty to Rugieri. In opposition, plaintiffs asserted that Cheek was subject to liability upon her concession that she gave Rugieri directions to the bathroom, which, they asserted, led him to a dangerous area. The IAS court granted Cheek's motion.

We reverse and reinstate the complaint against all of the defendants. It was an improvident exercise of the court's discretion to deny reinstatement of the action against the Bannisters, as plaintiffs established both a reasonable excuse for their default and the merits of the underlying action (CPLR 5015 [a] [1]; *Barasch v Micucci*, 49 NY2d 594 [1980]; *Perez v New York City Hous. Auth.*, 290 AD2d 265 [2002]). As the court recognized, counsel's failure to appear at oral argument amounted to excusable law office failure (*Perez*, 290 AD2d 265 [2002], *supra*). Further, the engineer's affidavit cited numerous defects in the construction and lighting of the cellar stairway. This, in conjunction with McAuliffe's statement that Rugieri appeared to be looking for something, which she surmised to be a light switch, immediately prior to his fall, was sufficient to establish the merits of the action against the owners of the house for purposes of restoring the action (*see Levy v New York City Hous. Auth.*, 287 AD2d 281 [2001] [lesser showing on merits to restore case as compared to defending motion for summary judgment]; *Reices v Catholic Med. Ctr. of Brooklyn & Queens*, 306 AD2d 394 [2003] [factual assertions in pleadings can establish merits of claim]). In accordance with our strong preference for resolving cases on their merits, we reinstate the action against the Bannister defendants (*Harwood v Chaliha*, 291 AD2d 234 [2002]).

We also reverse the grant of summary dismissal of the claims against defendant Cheek (*Guenzberg v Heyman*, 5 AD2d 766 [1958], *lv denied* 4 NY2d 676 [1958]). It is settled law in New York that "An . . . occupant of premises, who undertakes to direct a person unfamiliar with the surroundings to a particular part thereof, may be liable for active negligence in failing to give specific instructions, where the physical arrangement is such that a misunderstanding of the directions given would cause such person to enter a dangerous place" (85 NY Jur 2d, Premises Liability § 180, citing *Guenzberg, supra*). Here, the record before the motion court presented factual issues as to the exact directions Cheek gave Rugieri, and whether her guidance was sufficiently specific to lead Rugieri to the bathroom,

given the proximity of a similar doorway that posed a danger. In an affidavit submitted in support of her motion for summary judgment, Cheek stated that, at the end of the meal, she heard Rugieri say he had to use the bathroom. A short time later, she "noticed [Rugieri] in the kitchen area, and he appeared to be looking for the bathroom." Her affidavit states that she "called to him, saying, no, its back that way, as [she] pointed toward the bathroom door [,and] then turned her attention to [the guests at. the table]." By contrast, at her deposition, Cheek stated that upon seeing that Rugieri could not find the bathroom, she said "[c]ome back towards me and then this way left (indicating)."

This was Rugieri's first visit to the Bannister house, and while he had accompanied Cheek to the cellar earlier in the evening, he was unaware of the location of the bathroom. Cheek's knowledge of the layout of the home and the location of the basement stairway was superior. The jury could find that she knew that walking through the wrong doorway could lead an unsuspecting person to fall down the basement stairs. The jury could also conclude that Rugieri suffered grave consequences as a result of Cheek's failure to communicate this vital information to him (*id.*; *see also Grossel v Lehrman*, 28 AD2d 1138 [1967]; *Cole v Lamattina*, 13 AD2d 993 [1961]).

The dissent argues that this case is different from *Guenzberg* because there is no evidence here that Cheek gave Rugieri "erroneous" directions. However, at this stage of the litigation, the specific nature of the directions given by Cheek has not been established. In any event, the issue is not whether the directions were "wrong" but whether they placed Rugieri at risk. Because these issues cannot be determined as a matter of law, summary judgment is not appropriate.

The dissent also argues that *Guenzberg, Cole and Grossel* are "outmoded," seemingly because they were decided before the adoption of comparative negligence in New York. However, these cases remain good law and govern plaintiffs' claim of negligence against defendant Cheek. Moreover, proportional contribution by multiple tortfeasors under CPLR article 14 does not come into consideration until there have been determinations of liability. This case has not reached that posture, and no CPLR article 14 issues are raised on this appeal. Concur—Mazzarelli, Saxe and Ellerin, JJ.

Tom, J.P., and Nardelli, J., dissent in part in a memorandum by Tom, J.P., as follows: The majority's position comes perilously close to exemplifying the adage that no good deed goes unpunished. The attempt to assist a guest in locating the

bathroom, while unsuccessful, should not be rewarded with the imposition of tort liability under the factual circumstances of this case. Plaintiffs have not demonstrated, by competent proof, that their claim against Leann Cheek has any merit. Therefore, I respectfully dissent and would affirm so much of the order as dismissed the complaint as against said defendant.

The essential facts are undisputed. Having received permission to use the Bannister house in Sag Harbor for the weekend, defendants Leann Cheek and Dolores McAuliffe invited Joseph Rugieri and James Toner for dinner. The house, as described by witnesses and as depicted in photographs contained in the record, is a small, single-story bungalow with a covered deck along the back side of the dwelling. Shortly after his arrival at about 6:30 P.M., Mr. Rugieri, age 72, accompanied Ms. Cheek, age 71, to the basement to ascertain that the water heater was properly adjusted to assure a sufficient supply of hot water. They reached the basement through the only access door, located off the kitchen.

Dinner was served on the deck, which is reached by a door off the living room. After the meal, Mr. Rugieri left the table and entered the house to use the bathroom, located adjacent to the living room. Observing that he had walked through the living room, passed the bathroom door, and entered the kitchen, defendant Cheek told him to come "this way and left," motioning to him to "[c]ome back towards me and then this way left," as she pointed toward the bathroom door. She returned her attention to her companions at the dinner table and immediately heard thumping sounds. Upon investigation, she found the door to the basement open, with the light on and Mr. Rugieri lying unconscious at the foot of the basement stairs. Mr. Rugieri was rendered incapacitated as the result of his injuries and is described in plaintiffs' bill of particulars as being "extremely confused and agitated" with "short and long term memory deficits" and a "short attention span."

This action was commenced by plaintiffs, his present guardians, against the Bannisters, as owners of the property, for failure to maintain the premises in reasonably safe condition. Recovery is sought against defendants Leann Cheek and Dolores McAuliffe on the theory that they violated their duty towards their guest "by giving him erroneous instructions concerning the location of the bathroom and in directing said plaintiff, who was unfamiliar with the premises, to a place that was dangerous without warning him of the danger."

In her verified answer to the complaint, defendant McAuliffe stated that she watched Mr. Rugieri leave the table and observed

that he had opened the door to the basement. She and defendant Cheek and Mr. Toner all "called out to him that was not the door to the bathroom but rather to the cellar. He seemed not to hear us, appeared to be searching for something inside, probably the light, and then plunged down the cellar steps of the premises to the basement floor."

At her examination before trial, defendant Cheek testified that, other than stating his intention to go to the bathroom before leaving the table, she could not remember Mr. Rugieri saying anything else. Although she did not recall the exact time, it was still light outside, and the lights in the living room and the kitchen were both on. At defendant McAuliffe's examination before trial, she also testified that she did not remember Mr. Rugieri saying anything at all upon leaving the table.

This matter is before this Court on appeal from the denial of plaintiffs' motion to vacate their default in appearance in opposition to defendants' motion for summary judgment dismissing the complaint. Supreme Court properly declined to grant the relief sought by plaintiffs as against defendant Cheek. It is well settled that a plaintiff who moves to vacate a default is required to demonstrate the merit of the complaint by providing an affidavit of merit from an individual with personal knowledge of the facts (*see Hunter v Enquirer/Star, Inc.*, 210 AD2d 32, 33 [1994]). "The affidavit submitted from such individual must make sufficient factual allegations; it must do more than merely make conclusory allegations or 'vague assertion[s]' " (*Peacock v Kalikow*, 239 AD2d 188, 190 [1997]).

Plaintiffs' theory of liability against Leann Cheek is that she negligently directed Mr. Rugieri to the basement stairs, where he sustained injury. However, the record is devoid of any evidence to support this claim. The evidence reflects that when Ms. Cheek observed that Mr. Rugieri had already passed the bathroom and was in the kitchen, she motioned and told him to "[c]ome back towards me and then this way left" pointing towards the bathroom door. There was nothing about these instructions. Ms. Cheek, by words and motion, properly directed Mr. Rugieri towards the bathroom door.

The failure of Mr. Rugieri to follow the directions, resulting in his injury, cannot serve as a basis to impute liability to Ms. Cheek, who imparted coherent and specific directions. To hold her accountable under these facts, this Court would have to embrace the proposition that a party who undertakes to warn of an imminent, potential danger may be held liable in the event that such warning is unsuccessful in preventing injury. The majority proposes such a rule even where, as here, the advice is

both accurate and, if heeded, would have led the injured party to safety. The result would be to render the advisor absolutely liable, even where the sole cause of injury is the negligence of the injured party. Having received proper directions, which is uncontroverted on this record, Rugieri is wholly responsible for the injuries sustained as a result of his failure to follow those directions, for whatever reason.

In support of liability against Ms. Cheek, plaintiffs rely on outmoded decisions, none of which supports their position.* In *Guenzberg*, this Court found that while the trial court erroneously found plaintiff to be an invitee, the judgment could be upheld, even though she was only a licensee. We stated: "Defendant's liability was established by his affirmative act in carelessly directing plaintiff to the powder room. Having undertaken to give a direction to a person unfamiliar with the surroundings, defendant was under a duty to give specific instructions, particularly in view of the physical arrangement of the premises and the many doors in the alcove to which he pointed. Defendant, chargeable with the knowledge that a misunderstanding of his direction would lead plaintiff to a place of danger, failed to warn plaintiff of the danger of opening the door to the cellar—a danger which plaintiff was unlikely to discover for herself." (*Id.*)

Guenzberg is distinguishable from this matter on several grounds. First, there is no evidence that defendant Cheek gave any directions to Mr. Rugieri that were erroneous. Second, Mr. Rugieri was not "unlikely to discover" the danger posed by the basement stairs because he had already negotiated those same steps earlier that evening on his way to inspect the water heater. Finally, there is no indication that the configuration of the small house was confusing with "many doors" located in close proximity (*cf. Cole v Lamattina*, 13 AD2d 993 [1961] [door leading to cellar located adjacent to door leading to bar]).

Similarly, in *Grossel v Lehrman* (28 AD2d 1138 [1967]), the Second Department granted a new trial, holding that the "plaintiff made out a prima facie case of defendants' negligence and her own freedom of [*sic*] contributory negligence." The Court stated: "While in some instances a social guest who

---

* *Guenzberg v Heyman* (5 AD2d 766 [1958], *lv denied* 4 NY2d 676 [1958]), *Cole v Lamattina* (13 AD2d 993 [1961]) and *Grossel v Lehrman* (28 AD2d 1138 [1967]) were decided before the adoption of comparative negligence in New York (CPLR art 14; L 1974, ch 742 [eff Sept. 1, 1974]; *see also* Prosser and Keeton, Torts § 62, at 432-433 [5th ed]). Thus, the decisions reflect the imperative to conclude that the plaintiff was not responsible in any way for the injuries sustained in order to permit recovery.

proceeds into darkness may be guilty of contributory negligence as a matter of law, where, as at bar, plaintiff gives proof that her injury resulted solely as a consequence of following such instructions in the use of defendants' premises and entry into a dimly illuminated area, the issues of negligence and contributory negligence should both be submitted to the jury to decide (*Guenzberg v. Heyman*, 5 A D 2d 766)." (*Id.* [citations omitted].) In contrast, the only evidence of any directions being given to Mr. Rugieri are the respective statements of defendants Cheek and McAuliffe, who attempted to warn him that he was at the wrong door and guide him towards the bathroom.

Also inapposite is *Quinlan v Cecchini* (41 NY2d 686 [1977]), in which a young guest returned to a dark house with which she was unfamiliar and, without any warning from her host, entered an unilluminated landing through a side door, falling down the unprotected basement steps, located only inches away. Notably, Mr. Rugieri did not "proceed[ ] into darkness" (*Grossel*, 28 AD2d at 1138) but was in an illuminated kitchen; there is no proof that he was induced to enter a dangerous area, and he was not entirely unfamiliar with the location of the basement steps, having traversed them previously.

In this matter, the location and condition of the basement stairs were not unknown to Mr. Rugieri (*see Schurr v Port Auth. of N.Y. & N.J.*, 307 AD2d 837 [2003] [stationary escalator]; *cf. Fisher v Kavoussi*, 90 AD2d 597, 598-599 [1982] [latent defect]). Thus, the circumstances do not implicate the duty to warn. In any event, there is no question that a warning was, in fact, issued by the other diners, as the pleadings and uncontroverted deposition testimony make clear.

In support of the motion plaintiffs also submitted an unsigned, undated statement allegedly made by Mr. Toner who was not deposed, having died a year before this action was commenced. This statement constitutes pure hearsay with no probative value and cannot serve to demonstrate the merit of plaintiffs' claim.

That Mr. Rugieri has no recollection of the circumstances surrounding his fall does not relieve him of the obligation to put in a prima facie case. While plaintiffs assert that they are subject to a reduced burden of proof due to their ward's impaired memory based on *Noseworthy v City of New York* (298 NY 76 [1948]), this Court has held that *Noseworthy* does not relieve a plaintiff of the necessity to establish that the defendant's "negligence was 'a substantial cause of the events which produced the injury' " (*Lynn v Lynn*, 216 AD2d 194, 195 [1995], quoting *Derdiarian v Felix Contr. Corp.*, 51 NY2d 308, 315 [1980]). Moreover, we noted that where, as here, there are no witnesses to

the accident, *Noseworthy* is inapplicable since both the injured party and the defendants have no knowledge of the events surrounding the accident and, thus, are " 'similarly situated insofar as accessibility to the facts . . . is concerned' " (*id.*, quoting *Wright v New York City Hous. Auth.*, 208 AD2d 327, 332 [1995]).

Accordingly, so much of the order as dismissed the complaint as against defendant Cheek should be affirmed.