■ Loretta Schurr, Appellant, v Port Authority of New York and New Jersey et al., Defendants, and Continental

Airlines et al., Respondents. [763 NYS2d 304] —Amended judgment, Supreme Court, New York County (Walter Tolub, J.), entered June 10, 2002, dismissing the complaint and bringing up for review an order, same court and Justice, entered March 20, 2002, granting the motion of the remaining defendants, Continental Airlines and Millar Elevator Service Company, sued herein as Miller Elevator, Inc., for summary judgment, affirmed, without costs or disbursements. Appeal from the March 20, 2002 order unanimously dismissed, without costs, as subsumed in the appeal from the ensuing judgment.

Plaintiff commenced this action to recover for injuries she allegedly sustained when she tripped and fell while descending the stairs of a stopped escalator. She attributes the loss of her footing to the uneven spacing of the stopped escalator's risers. The record, however, contains no evidence warranting the inference that the stopped escalator posed a reasonably foreseeable hazard to those who, like plaintiff, used it in the manner of a staircase to reach the next floor. Prior to the date of the accident, plaintiff, who had been on escalators "all [her] life," was aware that as escalator steps reached the bottom, "they flattened out and go into a slit" and had "probably" walked on stopped escalators before. The spacing of the stationary escalator risers was open and obvious to "[a]ny observer reasonably using his or her senses" and there is thus no ground to conclude that the risers were not safely traversable in the exercise of ordinary care (*see Tagle v Jakob,* 97 NY2d 165, 170 [2001]; *Auguste v Montgomery Ward & Co.,* 257 Ill App 3d 865, 629 NE2d 535 [1993], *lv denied* 156 Ill 2d 555, 638 NE2d 1112 [1994]). Moreover, as plaintiff herself recognized, the decrease in riser height at the bottom of the escalator is a condition found on moving escalators as well as those that are stationary. Defendants were under no duty to warn of or otherwise protect plaintiff from a condition that posed no reasonably foreseeable hazard (*see Tagle v Jakob, supra*; *Pinero v Rite Aid of N.Y.,* 294 AD2d 251 [2002], *affd* 99 NY2d 541 [2002]).

Moreover, there was no showing that the escalator was defective or that its use by pedestrians while stopped violated applicable safety codes or specific building code provisions. In fact, the maintenance technician testified that he was unaware of any provision in the applicable safety code (American National Safety Institute Code published by the American Society of Mechanical Engineers, A.17.1A) that would prohibit the use of an escalator in its stopped position and that, by explicit code provision, escalators are required to be equipped with safety devices that bring them to a stop in the event of

mishap or emergency. Concur—Andrias, J.P., Saxe and Sullivan, JJ.

Ellerin, J., dissents in a memorandum as follows: I would vacate the amended judgment dismissing the complaint and remand the matter for further proceedings because the evidence permits a rational inference of negligence on the part of defendants.

Plaintiff testified that before her accident she was aware that the steps on a moving escalator flatten out at the bottom and go into what she called a "slit" and that the distance between the steps decreases toward the bottom of the escalator. However, her accident took place on the steps of a stationary escalator. Plaintiff stated that as she walked down the non-moving steps she did not anticipate that the step height would decrease. When she reached about the third step from the bottom, the distance to the next step was so much shorter than the distance between the steps she had already walked down that she was caused to "overstep," lose her balance and land on her ankle.

Plaintiff stated that she had not seen any warning signs to alert the public that the escalator was not moving and that its steps would be uneven in certain places. Indeed, she was unaware that the escalator was not moving until she had stepped onto it, after which she proceeded at a "slow to normal pace" such as the pace at which one would descend a standard staircase, holding onto the escalator bannister all the way. Plaintiff's expert in safety practices applicable to the safe movement of persons in commercial buildings, including the use of elevators and escalators in such buildings, stated in an affidavit that generally accepted industry standards require that the distance between the steps at every point along a stationary staircase be a uniform standard height. The expert opined that, based on previous experience on staircases, a person descending on a stationary escalator reasonably assumes that the step height will be uniform from top to bottom and that variances in step heights create an inherently dangerous condition.

The motion court found that as a matter of common experience the decreasing step height is observable both on moving and stationary escalators. However, plaintiff was not accustomed to being on stationary escalators and did not see that this escalator was stationary when she first stepped onto it. Whether from the higher steps on the escalator she could have observed the decreasing distance between the lowest steps is a question of fact, as is whether in any event plaintiff had a clear

view of those steps, given her testimony that there were people ahead of her on the escalator.

While defendants are not insurers of plaintiff's safety and plaintiff had an obligation to use reasonable care for her own safety, defendants' obligation was to keep their premises in a reasonably safe condition for its anticipated use (*Conroy v Saratoga Springs Auth.*, 259 App Div 365 [1940], *affd* 284 NY 723 [1940]). When viewed in the light most favorable to plaintiff, the evidence establishes a prima facie case of negligence in that defendants failed to take any measures to safeguard plaintiff and others from an apparently dangerous condition that was not open and obvious (*see Morell v Peekskill Ranch*, 104 AD2d 492, 494 [1984] [Rubin, J., dissenting], *revd on dissenting mem* 64 NY2d 859 [1985]).