**NOT RECOMMENDED FOR PUBLICATION**
File Name: 06a0822n.06
Filed: November 8, 2006

**No. 05-6035**


**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

PHYLLIS KILGORE and husband, TERRY R.
KILGORE,

     **Plaintiffs-Appellants,**

v.                                                                               ON APPEAL FROM THE UNITED
                                                   STATES DISTRICT COURT FOR THE
CARSON PIRIE HOLDINGS, INC.,                                       EASTERN DISTRICT OF TENNESSEE
d/b/a PROFFITT'S DEPARTMENT STORE

     **Defendant-Appellee.**

—————————————————————————— /


BEFORE:    CLAY, SILER, and BALDOCK[*], Circuit Judges.

      **CLAY, Circuit Judge.**  Plaintiff Phyllis Kilgore brought this negligence action based on

diversity of citizenship to recover for injuries sustained when Plaintiff fell while descending a

stationary escalator owned by Defendant Carson Pirie Holdings, Inc., d/b/a/ Proffitt's Department

Store.  The district court granted summary judgment in favor of Defendant, holding that (1)

Plaintiff's expert witnesses's testimony was inadmissible under Fed. R. Evid. 702; (2) Defendant

was governed by an ordinary standard of care, as opposed to the heightened standard of care

---

     [*] The Honorable Bobby R. Baldock, Senior Circuit Judge of the United States Court of
Appeals for the Tenth Circuit, sitting by designation.

applicable to common carriers; and (3) summary judgment was appropriate because Plaintiff failed to established that Defendant owed her a legal duty.

For the reasons stated below, we **AFFIRM** the exclusion of Plaintiffs' expert witness and the determination that Defendant was not governed by the standard of care applicable to common carriers, but **REVERSE** the district court's grant of summary judgment on the ground that Plaintiff failed to establish a legal duty owed to her by Defendant and **REMAND** for trial.

## BACKGROUND

On May 3, 2001, Plaintiffs, who are citizens and residents of Virginia, went shopping at Proffitt's, a department store located in Kingsport, Tennessee and owned by Defendant. Plaintiff Phyllis Kilgore entered the second floor of Proffitt's. She intended to go down to the first floor of the department store and approached the elevator for this purpose; but because there was a group of people waiting for the elevator, Plaintiff decided to use the escalator. When she arrived at the escalator, Plaintiff noticed that the escalator was stationary. Although Plaintiff had never walked down a stationary escalator, she assumed that doing so would be safe, inasmuch as she had seen other people doing so.

Walking down the stationary escalator proved perilous for Plaintiff. During her descent, Plaintiff observed that the risers of the escalator created what she thought to be an "optical illusion" as she looked down the escalator. She decided to continue descending, instead of turning around and walking back up to the second floor and using the elevator, because she felt that continuing would be safer. Plaintiff fell as she reached the bottom of the escalator, resulting in severe and permanent injuries. How or why Plaintiff fell is subject to dispute, but it appears that the fall occurred when

she stepped down from the last step of the escalator. At her deposition, Plaintiff recalled that as she was stepping off the last step with her right foot, the uneven height of the steps caused her to lose her balance; Plaintiff was unable to take the final step with her left foot, and this caused her body to twist and she fell, sustaining a fracture. In any event, it is not disputed that Plaintiff lost her balance and fell.

On May 2, 2002, Phyllis Kilgore and her husband, Terry R. Kilgore, who claimed loss of consortium, filed a complaint against Defendant in the United States District Court for the Eastern District of Tennessee.[1] Plaintiffs properly invoked federal diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(1). Plaintiffs claim that Defendant was negligent in failing to prevent customers from using a dangerous stationary escalator by taking actions such as blocking off the escalator, or at least warning customers about the dangers of using the stationary escalator as a stairway.

On May 4, 2004, Defendant filed a motion for summary judgment. The district court deferred ruling on this motion until procedural problems relating to Plaintiffs' expert witness were resolved, and Defendant later supplemented its motion for summary judgment by an April 11, 2005 supplemental reply motion asking the court to exclude Plaintiffs' expert, Albert Barnes ("Barnes"). Barnes is an architect who was prepared to testify about various dangers involving stationary escalators and potential ways to prevent those dangers. Defendant's motion opposed the admission

---

[1] In the complaint, Plaintiff mistakenly named Saks, Inc., as opposed to Carson Pirie Holdings, Inc., as the entity doing business as Proffitt's. The district court remedied this error with an order to substitute the correct defendant's name. Plaintiffs subsequently filed an amended complaint, adding Kone, Inc. ("Kone") as a defendant. Kone was under contract with Defendant to maintain the escalator at the center of Plaintiffs' complaint. On May 5, 2004, Kone filed a motion for summary judgment, which the district court granted on January 4, 2005. The present appeal concerns only Defendant Carson Pirie Holdings, Inc.

of Barnes' testimony on the grounds that Barnes' testimony could not properly be admitted under Fed. R. Evid. 702.[2] On June 24, 2005, the district court granted Defendant's motion in limine to exclude Barnes' testimony on the grounds that it was not based on sufficient facts or data, and that Barnes' testimony was not the product of reliable principles and methods. The district court also granted Defendant's motion for summary judgment. Plaintiffs timely filed a notice of appeal on June 27, 2005.

## DISCUSSION

Plaintiffs raise three claims on appeal. First, Plaintiffs argue that the district court abused its discretion by excluding Barnes' testimony. Second, Plaintiffs allege that the district court erred in analyzing Plaintiffs' claim under the standard of care of an ordinary negligence claim, as opposed to the heightened standard of care applicable to common carriers, which, according to Plaintiffs, applies to escalators. Third, Plaintiffs contend that even if their claim is analyzed under the standard of care applicable to ordinary negligence claims, the district court improperly granted summary judgment in favor of Defendant. We address each of these contentions in turn.

## I.   THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION BY EXCLUDING THE TESTIMONY OF PLAINTIFFS' EXPERT WITNESS

This Court reviews the admission or exclusion of expert testimony for abuse of discretion. *Brown v. Raymond Corp.*, 432 F.3d 640, 647 (6th Cir. 2005). This Court must give the district court "broad latitude in determining the reliability or relevance of the testimony." *Id.* (internal quotation marks omitted). However, "[a] district court abuses its discretion if it bases its ruling on an

---

[2] Defendant, along with Kone, had previously opposed Plaintiffs' expert on the ground that Plaintiffs failed to timely disclose their intention of calling Barnes.

erroneous view of the law or a clearly erroneous assessment of the evidence." *Id.* (internal quotation marks omitted).

The admissibility of expert testimony is governed by Fed. R. Evid. 702, which provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

The trial judge properly plays a gatekeeping role in determining whether expert testimony will assist the trier of fact. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999). In this gatekeeping role the trial court enjoys broad latitude in determining both the way in which it tests the reliability of expert testimony, and the ultimate question of whether such expert testimony is or is not admissible. *Id.* at 152. The focus of these determinations, of course, "must be solely on principles and methodology, not on the conclusions that they generate." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 595 (1993).

In this case, the trial court excluded the testimony of Barnes after determining that his testimony was not supported by sufficient facts or data, and that the methodology by which Barnes arrived at his conclusions was unreliable. If allowed, Barnes would have testified to essentially three positions: (1) a stationary escalator is dangerous and should not be used as a stairway, because the risers at the bottom are not uniform in height; (2) a stationary escalator is dangerous and should not be used as a stairway, because the escalator creates an "optical illusion" that causes confusion and disorientation; and (3) because of the dangers of using a stationary escalator, the owner of the escalator must take certain appropriate steps so that the escalator is not used as a stairway.

**1. The dangers of a stationary escalator**

To support his conclusion that a stationary escalator is dangerous, Barnes relied on several sources, none of which provided a reliable foundation for his opinion.[3]  Specifically, Barnes relied upon (1) the National Fire Protection Association ("NFPA"); (2) various websites; and (3) the Southern Standard Building Code ("SSBC").   The NFPA requires buildings to have a certain minimum number of fire exits and accompanying stairways, and does not allow an architect to use an escalator to fulfill the requirement of a minimum number of fire exits.  But this is because the treads of an escalator may need to be removed for maintenance, so that "it cannot be assured that persons would be able to walk on these devices when emergency egress is needed."  (J.A. at 310.) Thus the NFPA does not speak to whether a stationary escalator is dangerous to use as a stairway because of the varying height of the steps at the bottom of the escalator, and is irrelevant to the instant case.

Of the various websites Barnes perused, only one website spoke to the use of a stationary escalator as a stairway.  That website, from the Elevator/Escalator Safety Foundation, contained a section entitled, "Escalator Myths and Fears," which stated: "Myth:  If an escalator is standing still, it is just a set of stairs.  Truth: Not at all.  Escalator steps are not the correct height for normal walking." (J.A. at 312.)  Barnes' reliance on this website is problematic, however, as the danger that the website warns about is not the varying height of the bottom risers of an escalator.  Instead, the website warns that escalator risers *in general* are of a greater height than ordinary steps on a

---

[3] There were a variety of resources that Barnes studied but upon which he did not rely, because such resources were not relevant to a stationary escalator.  For example, the American Society of Mechanical Engineers standards only apply to a moving escalator.  (J.A. at 311.)

stairway. Neither Barnes nor Plaintiffs assert that an escalator should not be used as a stairway because the general height of an escalator step is greater than the height of a stairway step. Barnes' reliance on this website is thus misplaced.

The Southern Standard Building Code is the final source on which Barnes based his opinion that stationary escalators are dangerous. The SSBC, with regard to *stairs*, states in relevant part: "1007.3.4 Treads shall be of uniform depth and risers of uniform height in any stairway between two floors." In Barnes' view, when an escalator stops, it becomes a stairway that must comply with the SSBC. As a result, the varying height of the bottom risers of a stationary escalator would violate the SSBC and is therefore unsafe. Yet nothing in the SSBC itself states that it applies to a stationary escalator–in fact, it would be impossible for an escalator to comply with the SSBC's stairway regulations when stationary while simultaneously complying with Tennessee's applicable standards for operating escalators. Thus, although this testimony was arguably relevant, we cannot say that the district court abused its discretion in excluding Barnes' testimony that a stationary escalator should not be used as a stairway because of the varying height of the steps at the bottom of the escalator. This is not a case where the district court based "its ruling on an erroneous view of the law or a clearly erroneous assessment of the evidence." *Brown*, 432 F.3d at 647 (internal quotation marks omitted).

**2. The optical illusion**

Barnes' second position was that a stationary escalator should not be used as a stairway because the appearance of the risers creates an "optical illusion" that causes a state of disorientation dangerous to persons standing at the top of the escalator looking down. Barnes relied on two sources

for this position: (1) a website article entitled, "Wallpaper Illusion Causes Disorientation and Falls on Escalators;" and (2) his own personal experience riding escalators.[4]  The internet article stated that because of the striations on the top of the steps, the steps tend to merge together in appearance, thus causing the optical illusion.  Barnes, however, did not know on what research or methodology the article was based, and he admitted that he did not conduct any independent research on this subject.  In fact, Barnes readily admitted that he could not scientifically rely on the article.  As far as his own personal experience was concerned, Barnes stated that he and persons with whom he is acquainted have experienced the optical illusion caused by the appearance of the escalator.  These facts, however, are insufficient to qualify Barnes as an expert capable of rendering an opinion on the "optical illusion" effect.  Merely riding an escalator does not engender the "scientific, technical, or other specialized knowledge" that Rule 702 requires. As the district court found, the "optical illusion" effect, and the facts that give rise to it, are "so well-known that expert testimony is not needed to establish those facts and the effect thereof." (J.A. at 474.)  Barnes admitted that he is not an optometrist and has conducted no research or study with respect to the optical illusion allegedly created by the appearance of the escalator.  We hold that the trial court was within its discretion in concluding that Barnes' testimony would not assist the trier of fact in determining the dangers of riding a stationary escalator, because Barnes' second position simply was not supported by sufficient data or reliable methodology.

---

[4] Barnes did state that he did "a lot" of research on the optical illusion created by the appearance of an escalator, but he could not refer to anything in specific.  In fact, when pressed closely, Barnes only offered the Consumer Protection Agency website, despite the fact that no information from that website was offered as an exhibit.

**3. Appropriate curative steps**

Barnes' third position was that because of the dangers of using a stationary escalator as a stairway, the owner or operator of the escalator must take certain steps to safeguard the public. Barnes recommended an audible warning signal, such as a bell or whistle, that would activate when the escalator stopped, allowing the owner or operator to block off the escalator, and signs instructing customers not to use a stationary escalator as a stairway. Although Barnes claimed that such steps were "industry standard," he could point to no evidence to validate this claim. Moreover, there was nothing in the building code or any other applicable requirements that mandated such steps. Finally, Barnes did not conduct any research of his own to determine whether these measures were effective. Given these facts, we hold that the district court's exclusion of Barnes' testimony as to this position was not an abuse of discretion.

**II.    THE DISTRICT COURT DID NOT ERR IN HOLDING DEFENDANT TO A STANDARD OF ORDINARY NEGLIGENCE**

Plaintiffs next challenge the district court's determination that Defendant's conduct with respect to the stationary escalator should be analyzed under an ordinary standard of care, rather than the heightened standard of care applicable to common carriers. Whether the district court properly defined the appropriate standard of care is a question of law that this Court reviews *de novo*. *Phillips Petroleum Co. v. Stokes Oil Co., Inc.*, 863 F.2d 1250, 1254 (6th Cir. 1988) (citing *United States v. Paducah Towing Co.*, 692 F.2d 412 , 421-22 (6th Cir.1982)). Because this is a case arising under federal diversity jurisdiction, this Court applies the law of the forum state. *Westfield Ins. Co. v. Tech Dry, Inc.*, 336 F.3d 503, 506 (6th Cir. 2003). The Tennessee Supreme Court has not defined what

standard of care is applicable to the owner or operator of an escalator. Therefore, this Court must predict how the Tennessee Supreme Court would rule if confronted with this particular question. *Id.* (citing *Stalbosky v. Belew*, 205 F.3d 890, 893-94 (6th Cir.2000)).

Under Tennessee law, common carriers must "exercise . . . the highest degree of care and foresight for the passenger's safety." *Knoxville Cab Co. v. Miller*, 138 S.W.2d 428, 429, (Tenn. 1940); *see also* 1 Tenn. Juris., Carriers, § 10 ("The rule in regard to the degree of care and vigilance exacted from a carrier is an extremely rigorous one. They are bound to the highest degree of care and diligence, and are answerable for all injuries to passengers resulting from the slightest negligence or want of skill or prudence."). Although common carriers are not liability insurers, "proof of injury suffered from contact with anything for which the carrier was responsible, or which, as a general rule, he ought to have guarded against, or from the absence of anything which, as a general rule, he ought to have supplied, is sufficient to put him upon his defense." *Illinois Cent. R. Co. v. Kuhn*, 64 S.W. 202, 204 (Tenn. 1901). Tennessee is a state that has extended this rigorous duty that common carriers owe their passengers to the owners and operators of elevators. *Southern Bldg. & Loan Ass'n v. Lawson*, 37 S.W. 86, 87 (Tenn. 1896). Although the Tennessee Supreme Court has never considered the question, Plaintiffs argue by way of analogy that the heightened standard of care applicable to elevators should be extended to escalators.

In our view, whether Tennessee would hold that escalator operators generally ought to be governed by the same standard of care applicable to elevator operators is a question that this Court need not reach. It is sufficient to hold, as we do, that where a plaintiff is injured on a *stationary* escalator, the governing standard is one of ordinary negligence. The purpose of holding common

carriers to a higher standard of care is that their passengers have entrusted the carrier with their safety, and even a small amount of negligence can result in severe harm. As stated by this Court, a heightened standard of care is appropriate because: "[T]here are committed to [the carrier's] charge, for the time, the lives or safety of persons of all ages, and of all degrees of ability for self-protection, and as the slightest failure in watchfulness may be destructive of life and limb, it is reasonable to require of him the most perfect care of prudent and cautious men." *Mitchell v. Marker*, 62 F. 139, 143 (6th Cir. 1894) (quoting Cooley, Torts 768, 769 (2d ed.)) (internal quotation marks omitted).

This principle–that the law should require exacting prudence where the safety of passengers depends almost entirely on third parties and the potential harm involved is substantial–justifies the extension of a duty of heightened care to elevator operators. *See, e.g., id.* ("Persons who are lifted by elevators are subjected to great risk to life and limb. They are hoisted vertically, and are unable, in case of the breaking of machinery, to help themselves."). Arguably, the same principle applies to a moving escalator. *See, e.g., Petrie v. Kaufmann & Baer Co.*, 139 A. 878, 879 (Penn. 1927) ("As an escalator and an elevator perform the like service of conveying people from one elevation to another, they are subject to like duties and responsibilities. The passenger is at least as powerless to influence the action of the former as the latter. Hence the rule that an elevator is deemed a common carrier applies equally to an escalator."). *But see Tolman v. Wieboldt Stores, Inc.*, 233 N.E.2d 33, 36 (Ill. 1967) (refusing to extend common carrier duty to escalator because escalator passenger "may actively participate in the transportation in a manner similar to the use of a stairway, and may contribute to his own safety"). Yet regardless of the substantial harms that may stem from

an escalator's mechanical failures, stationary escalators do not present similar dangers. A person using a stationary escalator does not wager his or her safety on the escalator's proper functioning to the same extent as a person using an elevator. Therefore, the proper standard in the instant case is one of ordinary care.

### III. PLAINTIFFS PRESENTED A GENUINE ISSUE OF MATERIAL FACT SUCH THAT THE DISTRICT COURT ERRED IN GRANTING SUMMARY JUDGMENT.

This Court reviews the district court's decision on a motion for summary judgment *de novo*. *Turner v. City of Taylor*, 412 F.3d 629, 637 (6th Cir. 2005). The moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The Court must view the facts and all of the inferences drawn therefrom in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Under Tennessee common law, a claim of negligence requires a plaintiff to prove: (1) a duty of care owed by the defendant to the plaintiff; (2) conduct below the applicable standard of care that amounts to a breach of that duty; (3) an injury or loss; (4) cause in fact; and (5) proximate cause. *McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995).

The district court based its decision to grant summary judgment against Plaintiffs entirely on the ground that Plaintiffs failed to establish a legal duty, and Defendant does not argue on appeal that Plaintiffs have failed to present a genuine issue of material fact with respect to any other element of their claim. Thus, we confine our discussion to whether summary judgment was appropriate on the issue of whether Defendant owed a duty to Plaintiff.

Whether a duty of care exists is a question of law to be determined by the courts. *Burroughs v. Magee*, 118 S.W.3d 323, 327 (Tenn. 2003). In this case, it is beyond dispute that Plaintiff Phyllis Kilgore was a customer of Defendant. Under Tennessee law, "[t]he duty owed a customer by a proprietor of a place of business 'is to exercise reasonable care to keep the premises in a reasonably safe and suitable condition.'" *Simmons v. Sears, Roebuck & Co.*, 713 S.W.2d 640, 641 (Tenn. 1986) (citing *Allison v. Blount Nat'l Bank*, 390 S.W.2d 716, 718 (Tenn. Ct. App. 1965)). Formerly, the duty of a defendant was limited by the "open and obvious" rule, under which a defendant was only required to remedy hidden or latent dangers on the property, or warn potential plaintiffs about their existence. *Eaton v. McLain*, 891 S.W.2d 587, 595 (Tenn. 1994). However, since the Tennessee Supreme Court's decision in *Coln v. City of Savannah*, 966 S.W.2d 34 (Tenn. 1998), *overruled on other grounds by Cross v. City of Memphis*, 20 S.W.3d 642 (Tenn. 2000), the existence of a legal duty "must be analyzed with regard to foreseeability and gravity of harm, and the feasibility and availability of alternative conduct that would have prevented the harm," regardless of whether a dangerous condition can be labeled "open and obvious." *Id.* at 43. In determining whether a duty exists, Tennessee law instructs courts to consider the factors in the Restatement (Second) of Torts, § 343A (1965) (hereinafter "Restatement"). *Id.* at 42. As relevant here, the Restatement directs courts to consider not just the plaintiff's knowledge of the existence of dangerous conditions, but whether the plaintiff appreciated the danger, Restatement § 343A cmt. b, and whether the harm to the plaintiff should have been anticipated by the defendant. Restatement § 343A cmt. f; *see also Coln,* 966 S.W.2d at 41.

Tennessee courts have not addressed the narrow issue of whether a stationary escalator creates an unreasonable risk of harm. Absent specific guidance, we independently analyze the factors set forth in *Coln,* and conclude that Defendant cannot prevail on the issue of duty at the summary judgment stage. At her deposition, Plaintiff stated that she had never walked down a stationary escalator, and that she was used to thinking that the steps were of a certain, equal height. These facts tend to show that Plaintiff did not perceive the nature of the risk involved, notwithstanding the fact that the unequal height of the risers may have been discernable upon visual inspection. It is also relevant that the Southern Standard Building Code requires that all stairs be of a uniform height.[5] Although the parties disagree about whether a stationary escalator must comply with the SSBC, the SSBC, combined with ordinary experience, supports the proposition that a stairway or stationary escalator is safest when its risers are of an equal height, and that risers of an unequal height pose some danger to persons traversing the stairs or stationary escalator. Moreover, the evidence shows that in the event that the escalator stops working and cannot be restarted shortly thereafter, it is Defendant's policy to rope off the escalator until such time that it can be serviced.

In light of these facts, it is probable that Defendant could have anticipated the harm to Plaintiff. *Cf. Jackson v. Bradley*, 987 S.W.2d 852, 854 (Tenn. Ct. App. 1998) (holding that premises owner owed a duty to a pedestrian injured by an open and obvious depression in a parking lot). Additionally, Defendant could have easily prevented the harm to Plaintiff, by roping off the escalator or merely placing a sign warning customers to use the elevator or the staircase in the event that the

---

[5] This Court may take judicial notice of the Southern Standard Building Code pursuant to Fed. R. Evid. 201 notwithstanding the fact that the trial court properly excluded the testimony of Barnes.

escalator was not operational. Weighing the foreseeability and gravity of the harm against the feasibility and availability of alternative conduct, we conclude that the record contains sufficient facts that, if established at trial, would give rise to a legal duty on the part of Defendant.[6]

Having concluded that application of the *Coln* balancing test gives rise to a legal duty, the next question is whether Defendant had actual or constructive notice of the dangerous condition. *Martin v. Washmaster Auto Ctr., U.S.A.*, 946 S.W.2d 314, 318 (Tenn. Ct. App. 1996). There is no allegation here that Defendant had actual notice that the escalator was stationary, so our inquiry focuses on constructive notice. A plaintiff may prove constructive notice of a dangerous condition by "showing a pattern of conduct, a recurring incident, or a general or continuing condition indicating the dangerous condition's existence." *Blair v. West Town Mall*, 130 S.W.3d 761, 765-66 (Tenn. 2004). Here, as the district court noted, escalators within Defendant's store repeatedly stopped for numerous reasons. This fact is sufficient to create a genuine issue of material fact as to whether Defendant was on constructive notice that the escalator was stationary in the instant case.

In sum, we conclude that Defendant had a legal duty to Phyllis Kilgore.[7] We will therefore reverse the district court's grant of summary judgment.

---

[6] Even though the existence of a duty is a question of law for the courts, once a duty is established, the scope of the duty is a question for the trier of fact. *Dooley v. Everett*, 805 S.W.2d 380, 384 (Tenn. Ct. App. 1990).

[7] The Defendant draws the Court's attention to two cases from other jurisdictions that hold that a defendant does not have a duty to warn or otherwise keep plaintiffs safe from the dangers inherent in a stationary escalator. *Schurr v. Port Auth. of New York and New Jersey*, 307 A.D.2d 837 (N.Y. App. Div. 2003); *Auguste v. Montgomery Ward and Co.*, 629 N.E.2d 535 (Ill. App. Ct. 1993). Of course, these cases are not controlling, and to the extent that we consider them relevant, we find the dissent in *Schurr*, 307 A.D.2d at 839 (Ellerin, J. dissenting), to be more persuasive.

**CONCLUSION**

For the foregoing reasons, we **AFFIRM** the district court's grant of summary judgment with respect to the exclusion of Plaintiffs' expert witness and the determination that Defendant was not governed by the standard of care applicable to common carriers, but **REVERSE** the district court's grant of summary judgment in favor of Defendant and **REMAND** the case for trial.