**Luisi v Metropolitan Transp. Auth.**

2024 NY Slip Op 30927(U)

March 20, 2024

Supreme Court, New York County

Docket Number: Index No. 155941/2018

Judge: Richard Tsai

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT:    **HON. RICHARD TSAI**          PART            **21**

*Justice*

-----------------------------------------------------------------------X

ANDREW LUISI,

           Plaintiff,

- v -

METROPOLITAN TRANSPORTATION AUTHORITY and
NEW YORK CITY TRANSIT AUTHORITY,

           Defendants.

-----------------------------------------------------------------------X

| | |
|---|---|
| INDEX NO. | 155941/2018 |
| MOTION DATE | N/A |
| MOTION SEQ. NO. | 002 |

**DECISION + ORDER ON MOTION**

The following e-filed documents, listed by NYSCEF document numbers (Motion 002) 50-61, 63-70

were read on this motion for          SUMMARY JUDGMENT

In this action for personal injuries arising from the use of a stationary escalator, defendants Metropolitan Transportation Authority and New York City Transit Authority (NYCTA) move for summary judgment dismissing the complaint. Plaintiff opposes the motion.

## BACKGROUND

Plaintiff Andrew Luisi alleges that, on September 28, 2017, at approximately 4:00 p.m., he tripped and fell while descending a stationary escalator (escalator ES369) at the street entrance of the subway station known as South Ferry Station (1 Train), Whitehall Street Station (R, W Trains) in Manhattan (NY St Cts Elec Filing [NYSCEF] Doc No. 66, verified bill of particulars ¶¶ 4, 10). Plaintiff alleges that defendants owned, operated, managed, maintained, controlled, and repaired the escalator (NYSCEF Doc No. 55, verified complaint ¶ 9). Defendants admitted that NYCTA operated and maintained the subway station (NYSCEF Doc No. 56, answer ¶ 6).

At plaintiff's statutory hearing on April 9, 2018, plaintiff testified that he had an accident at the Whitehall station at about 2:00 or 2:30 p.m. on September 28, 2017, when he was 56 years old (NYSCEF Doc No. 57, plaintiff's statutory hearing tr at 10, 28). He testified that he had used this station twice per month for about 18 months (*id.* at 29). Plaintiff stated that he "[s]tepped on the escalator with [his] left foot, looked at a sign adjacent to the top of the escalator that said that the elevator was out of service" (*id.* at 34). There were no other people in front of him at the time (*id.* at 34-35). Plaintiff stated that the escalator was not working, and he continued downward (*id.*). Plaintiff testified that he hit his head and lost consciousness, and woke up at the bottom of the escalator, surrounded by police and emergency service (*id.* at 35, 36). A witness took photographs and gave them to plaintiff a few weeks later (*id.* at 36, 37).

155941/2018   LUISI, ANDREW vs. METROPOLITAN TRANSPORTATION
Motion No. 002

Page 1 of 6

At his deposition, plaintiff testified that he did not recall ever walking up or down a stationary escalator at that location (NYSCEF Doc No. 58, plaintiff's deposition tr at 69-70). Plaintiff testified that when he stepped on the escalator, he was "adverted by a sign at the top of the escalator" (*id.* at 102, 115). The sign said "Please excuse the inconvenience. This elevator is out of order" (*id.* at 117; *see also* NYSCEF Doc No. 65 at 2). The escalator was to plaintiff's right as he approached the area (*id.* at 103). Plaintiff stated that at no point did he note whether the escalator was operating (*id.* at 109-110). Plaintiff testified that "[a]s he turned his head to the right, [he] read the sign, and [the] next thing [he] knew, [he] was at the bottom of the steps" (*id.* at 116). Plaintiff testified that gravity caused him to fall from the top step of the escalator to the bottom (*id.* at 120, 121). He testified that the inoperable escalator "caused [his body] to propel to the bottom of the escalator" (*id.* at 121). There was no other reason for his fall (*id.* at 123). There were no people in front of plaintiff on the escalator (*id.* at 129).

James Sullivan (Sullivan) testified that he was a Maintenance Supervisor Level I employed by NYCTA (NYSCEF Doc No. 59, Sullivan deposition tr at 10-11). According to Lift Net records, the subject escalator was not in service on the date of the accident (*id.* at 24). On September 26, 2017, a contractor found that the pawl brake pads were broken on escalator 369 (*id.* at 43). Sullivan testified that NYCTA also had signs indicating that an escalator was out of service, and that he did not know why a sign about an elevator was used (*id.* at 47, 48). He was unaware of any safety protocols for the use of stationary escalators as a stairway (*id.* at 53). The pawl brake is an alternative safety brake that is used when the main brake malfunctions (*id.* at 55). Sullivan testified that broken pawl brake pads would not affect the steps themselves; the escalator would just be stationary (*id.*).

Sullivan avers that, on the date of the accident, escalator 369 was out of service due to mechanical issues with the pawl brake pads (NYSCEF Doc No. 54, Sullivan aff, ¶ 5). It is the typical industry standard to barricade an escalator during periods of immediate repair or if there is an issue with the steps of the escalator (*id.*, ¶ 6). On the date of the accident, the escalator was stationary but was not currently being repaired (*id.*, ¶ 7). Thus, the escalator was deemed safe for use as a staircase (*id.*). According to Sullivan, pedestrians had the option of using the standard staircase, located directly adjacent to the escalator, or an elevator, located towards the rear of the staircase and escalators (*id.*, ¶ 8). At the time of the accident, the steps of the escalator were dry and had no visible defective conditions, foreign objects or debris on them (*id.*, ¶ 9).

Plaintiff commenced this action on June 25, 2018, alleging, among other things, that plaintiff "had the expectation that the escalator ES369 would be in motion moving [sic], but it was still and as a result, [p]laintiff . . . fell down the escalator, resulting in his suffering severe, personal and permanent injuries, all as a result of the negligence, carelessness, recklessness and gross negligence of" defendants (NYSCEF Doc No. 55, verified complaint ¶ 12).

By decision and order dated September 12, 2022, the court (Dominguez, J.) denied defendants' motion for summary judgment as procedurally defective with leave to re-file, given

**155941/2018  LUISI, ANDREW vs. METROPOLITAN TRANSPORTATION**
**Motion No. 002**

Page 2 of 6

2 of 6

that defendants' statement of material facts did not cite to the evidence submitted on the motion (NYSCEF Doc No. 46).[1]

## DISCUSSION

The standards for summary judgment are well settled. "The movant 'must make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to demonstrate the absence of any material issues of fact'" (*Bazdaric v Almah Partners LLC*, — NY3d —, —, 2024 NY Slip Op 00847, *2 [2024], quoting *Alvarez v Prospect Hosp.*, 68 NY2d 320, 324 [1986]). "Once the movant makes the proper showing, 'the burden shifts to the party opposing the motion for summary judgment to produce evidentiary proof in admissible form sufficient to establish the existence of material issues of fact which require a trial of the action'" (*Stonehill Capital Mgt. LLC v Bank of the W.*, 28 NY3d 439, 448 [2016], quoting *Alvarez*, 68 NY2d at 324).

Defendants argue that the stationary escalator was not a reasonably foreseeable hazard, and that they had no duty to warn or protect plaintiff from a condition that posed no reasonably foreseeable hazard.

A temporarily stopped escalator, without more, does not constitute a reasonably foreseeable hazard, and is not inherently dangerous (*Adamo v National R.R. Passenger Corp.*, 71 AD3d 557, 558 [1st Dept 2010], *lv denied* 15 NY3d 704 [2010]; *accord Narainasami v City of New York*, 203 AD3d 831, 833 [2d Dept 2022]). In *Adamo*, a case in which the plaintiff tripped and fell while ascending the stairs of a stopped escalator, the Court held that "[t]he temporarily stationary stairway did not present a reasonably foreseeable hazard, particularly in the absence of any allegation that it was in ill repair . . . , or that any of the steps, including the one on which she tripped, was defective or covered with debris" (*Adamo*, 71 AD3d at 558 [citation omitted]).

In *Schurr v Port Authority of New York & New Jersey* (307 AD2d 837, 838 [1st Dept 2003]), the plaintiff tripped and fell while descending a stopped escalator. There, the Appellate Division, First Department similarly concluded that the record "contains no evidence warranting the inference that the stopped escalator posed a reasonably foreseeable hazard to those who, like plaintiff, used it in the manner of a staircase to reach the next floor" because "[t]he spacing of the stationary escalator rises was open and obvious." In such circumstances, defendants "were under no duty to warn of or otherwise protect plaintiff from a condition that posed no reasonably foreseeable hazard" (*id.*).

Here, plaintiff testified that gravity caused him to fall from the top step of the stopped escalator to the bottom, and that there was no other reason for his fall (NYSCEF Doc No. 58, plaintiff's deposition tr at 120, 123). Plaintiff also testified that he simultaneously placed his left foot onto the first step of the escalator and read the sign that was posted next to the escalator (*id.* at 115, 118). The stationary condition of the escalator was "open and obvious to '. . . observer[s] reasonably using [their] senses' and there is thus no ground to conclude that the risers were not safely traversable in the exercise of ordinary care" (*Schurr*, 307 AD2d at 838, quoting *Tagle v Jakob*, 97 NY2d 165, 170 [2001]; *see also Jones v Presbyterian Hosp. in City of N.Y.*, 3 AD3d

---

[1] Defendants have now complied with 22 NYCRR 202.8-g (NYSCEF Doc No. 52).

**155941/2018   LUISI, ANDREW vs. METROPOLITAN TRANSPORTATION**                        **Page 3 of 6**
**Motion No.  002**

225, 226 [1st Dept 2004] [where plaintiff was injured while descending auditorium stairs, "stairs did not pose a reasonably foreseeable hazard"]).

Plaintiff does not claim that any of the steps were defective or covered in debris or that his fall was caused by inadequate lighting. Plaintiff testified that there was no one in front of him before he got on the escalator, that it was daylight at the time of his accident, and that he had used that station for over a year (NYSCEF Doc No. 58, plaintiff's deposition tr at 129; NYSCEF Doc No. 57, plaintiff's statutory hearing tr at 29, 35).

Thus, defendants have demonstrated that the stationary escalator did not present a reasonably foreseeable hazard. As such, defendants have established that they were "under no duty to warn of or otherwise protect plaintiff from a condition that posed no reasonably foreseeable hazard" (*Schurr*, 307 AD2d at 838).

In opposition, plaintiff argues that the improper sign prevented him from averting his injury. Plaintiff relies on an affidavit from a biomechanical engineer, Dr. Paul C. Ivancic, Ph.D., who states that "[a]llowing the stopped escalator to be used as a stairway created an unreasonably dangerous fall hazard particularly during descent. This incident could have been avoided if the entry and exit of the inoperable escalator were barricaded and pedestrians were directed to a functional stairway or elevator" (NYSCEF Doc No. 64, Ivancic aff at 8).

Dr. Ivancic states that as plaintiff stepped onto the escalator, he was reading a sign which incorrectly stated *"[t]his elevator is out of service"* (*id.* [emphasis in original]). Dr. Ivancic also indicates that:

"At the time of his fall, Mr. Luisi's head was turned rightward and he was distracted by the incorrect sign shown in Figure 1. This distraction prevented him from moving his hands quickly enough to prevent his fall.

Robinovitch investigated the time requirement without distraction for volunteers to move their hands to a protective position to prevent or break a fall. They defined the time required for their hands to conduct a shoulder-height target as reaction time plus movement time. They found that average contact time of the target among older adults during simulated forward falls was 615 ms (231 ms reaction time plus 383 ms movement time). This was quicker than the average ground contact time of the wrist and pelvis as measured in prior studies of simulated falls from standing, 680 and 715 ms, respectively.

Prior studies have documented slower reaction times in older adults between 290 and 460 ms due to distraction. Haque et al reported reaction times of distracted drivers greater than 40% as compared to non-distracted drivers. When applied to the previously reported data, these results indicate a delayed target contact time for older adults due to distraction between 707 ms and 1 second, which is longer than the ground contact time of the wrist. These results indicate that the incorrect sign (Figure 1), which distracted Mr. Luisi delayed his reaction time thus enabling his

**155941/2018 LUISI, ANDREW vs. METROPOLITAN TRANSPORTATION**
**Motion No. 002**

**Page 4 of 6**

4 of 6

body to fall down and impact the escalator before he was able to move his hands into a protective position to prevent or break the fall"

(*id.* at 7).

Dr. Ivancic further states that plaintiff's injuries and the injury mechanisms associated with the accident are consistent with epidemiological studies, which have reported injuries to escalator passengers. Dr. Ivancic explains that:

"McCann stated: '... the Consumer Product Safety Commission estimated there were 7,300 escalator . . . injuries requiring hospitalization in 1994 . . .' and '. . . 75% of the escalator injuries resulted from falls . . .' O'Neil et al studied escalator-related injuries among older adults. They reported an estimated 39,500 escalator-related injuries from 1991-2005 most frequently caused by a slip, trip, or fall. They stated: '[a]lmost 14% occurred while stepping on or off the escalator.' The most frequently injured body parts were the lower extremities and head. They stated: '[c]losed head injury, blunt head trauma, concussion, or subdural hemorrhage comprised 28% of the head injuries.' In their study of escalator-related injuries Schminke et al stated: '. . . most accidents in men were to the head and neck'"

(*id.* at 5-6 [emphasis omitted]).

It is well settled that an expert's opinion "'must be based on facts in the record or personally known to the witness'" (*Hambsch v New York City Tr. Auth.*, 63 NY2d 723, 725 [1984], quoting *Cassano v Hagstrom*, 5 NY2d 643, 646 [1959], *rearg denied* 6 NY2d 882 [1959]). "An expert may not reach a conclusion by assuming material facts not supported by the evidence, and may not guess or speculate in drawing a conclusion" (*Zeppetelli v 1372 Broadway, LLC*, 222 AD3d 813, 814 [2d Dept 2023]; *see also Roques v Noble*, 73 AD3d 204, 206 [1st Dept 2010]; *Santoni v Bertelsmann Prop., Inc.*, 21 AD3d 712, 714-715 [1st Dept 2005]). "In the absence of record support, an expert's opinion is without probative force" (*Guzman v 4030 Bronx Blvd. Assoc. L.L.C.*, 54 AD3d 42, 49 [1st Dept 2008]).

In this case, Dr. Ivancic's opinion is "conclusory and [is] not supported by references to specific, currently applicable safety standards or practices" (*Boatwright v New York City Tr. Auth.*, 304 AD2d 421, 421 [1st Dept 2003]; *see also Morrissey v New York City Tr. Auth.*, 100 AD3d 464, 464 [1st Dept 2012]). Dr. Ivancic indicates that the escalator should have been barricaded, citing statistics from the United States Consumer Product Safety Commission concerning escalator-related injuries, without reference to currently applicable industry standards or practices. These statistics also do not appear to refer to injuries on stopped escalators. By contrast, Sullivan states that the typical industry standard is to barricade a stationary escalator during periods of immediate repair (NYSCEF Doc No. 54, Sullivan aff, ¶ 6). On the date of the accident, the escalator was not being repaired, and thus was deemed safe for use as a traditional staircase to enter the station (*id.*, ¶ 7). The broken pawl brake pads did not affect the steps of the escalator (NYSCEF Doc No. 59, Sullivan deposition tr at 55).

**155941/2018 LUISI, ANDREW vs. METROPOLITAN TRANSPORTATION**
**Motion No. 002**

Page 5 of 6

5 of 6

To the extent that plaintiff argues that he was distracted by a sign next to the escalator indicating that an elevator, not escalator, was out of service, the sign is not so distracting that its mere existence makes an open and obvious condition such as a stationary escalator any less open and obvious (*Vasquez v Yonkers Racing Corp.*, 171 AD3d 418, 418 [1st Dept 2019] [slot machines were not so distracting that a missing chair was not open and obvious]). Any reasonable observer would have noted that the escalator was not moving.

Plaintiff testified that he simultaneously placed his left foot onto the first step of the escalator, while he turned his head to read the sign next to the escalator (NYSCEF Doc No. 58, plaintiff's deposition tr at 115, 118; *see also* NYSCEF Doc No. 57, plaintiff's statutory hearing tr at 65). The erroneous sign "merely furnished the condition or occasion" for plaintiff's fall rather than constituting one of its causes, as plaintiff could have looked at the sign at any point before he stepped onto the stopped escalator (*Sheehan v City of New York*, 40 NY2d 496, 503 [1976]). Thus, plaintiff's reliance on *Gutelle v City of New York* (55 NY2d 794 [1981]) and *Dupelle v Levesque* (198 AD2d 712 [3d Dept 1993]) is misplaced.

In light of the above, defendants' motion for summary judgment dismissing the complaint is granted.

## CONCLUSION

Accordingly, it is

**ORDERED** that defendants' motion for summary judgment dismissing the complaint (Seq. No. 002) is **GRANTED**, and the complaint is dismissed with costs and disbursements to defendants as taxed by the Clerk upon the submission of an appropriate bill of costs; and it is further

**ORDERED** that the Clerk is directed to enter judgment accordingly.

| 3/20/2024 | | RICHARD TSAI, J.S.C. |
| DATE | | |

| CHECK ONE: | X | CASE DISPOSED | | NON-FINAL DISPOSITION | |
| | X | GRANTED | DENIED | GRANTED IN PART | OTHER |
| APPLICATION: | | SETTLE ORDER | | SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | FIDUCIARY APPOINTMENT | REFERENCE |

**155941/2018  LUISI, ANDREW vs. METROPOLITAN TRANSPORTATION**                    Page 6 of 6
Motion No.  002

6 of 6